## MATHESON et al. v. NORFOLK & NORTH AMERICA STEAM SHIPPING CO., Limited, et al.
### No. 7438.

Circuit Court of Appeals, Ninth Circuit.
Oct. 22, 1934.

R. G. Wright, H. B. Jones, Robert Bronson, and Wright, Jones & Bronson, all of Seattle, Wash., for appellants.

Erskine Wood and Wood, Montague, Matthiessen & Rankin, all of Portland, Or., for appellee Norfolk & N. A. Steam Shipping Co.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

SAWTELLE, Circuit Judge.

This is an appeal from a decree in admiralty in an action whereby libelant/appellee, the Norfolk & North America Steam Shipping Company, Limited, owner of the British motorship Pacific Commerce, a steel steamer 420 feet long, 54 feet in beam, and 25 feet in depth, sought to recover from appellant Matheson, as pilot, damages alleged to have resulted from the grounding of said vessel on Desdemona Sands, opposite the Port of Astoria, Or., on October 29, 1931, while Matheson was in charge of the navigation of the vessel as pilot.

The Hartford Accident & Indemnity Company is involved in the proceeding only as surety for appellant Matheson.

Matheson impleaded the Port of Astoria, a municipal corporation, under General Admiralty Rule No. 56 (28 USCA § 723), claiming said port to be primarily responsible for any damage which was occasioned. The Port of Astoria was exonerated by the decree of the court below, and, by stipulation of the parties, it has been eliminated from this appeal, and the decree, in so far as it affects such party, is not sought to be disturbed.

The libel alleged that Matheson was a licensed Columbia river pilot and a member of the Columbia River Pilots' Association, and held himself out as one able and skilled in the piloting of vessels on the Columbia river; that on October 29, 1931, appellee employed Matheson as pilot on its vessel the Pacific Commerce and while in charge of the navigation of said vessel Matheson so maneuvered and navigated her that she grounded upon a sand bank in the Columbia river at Astoria, Or., doing considerable damage to the vessel; that the causes and circumstances of the grounding were as follows:

"The said respondent [Matheson], while in charge of said vessel and her navigation, attempted to bring her alongside and make her fast to Astoria Port Dock Pier No. 1, but so misjudged the state of the tide and the currents and eddies thereby set up around said dock, that after the forward spring line was made fast, the tide, striking the vessel on her port quarter, set the stern out from the dock before a stern line could be made fast; that thereupon said respondent ordered the spring line let go, intending to turn the vessel around on a port helm and come up stream to the dock with the vessel's starboard side thereto so that she would not be set out from the dock as had just happened; that said respondent, in navigating said vessel in his attempt to turn her around on a port helm, ran her

aground on a bar or shoal, the port side of the vessel grounding on the shoal; that the navigable channel at this place is more than a quarter of a mile wide; that as a result of said grounding, the ship's plates were bent and dented and she was otherwise damaged, and had to be repaired, and also had to employ towboats to come to her assistance, and libelant was thereby damaged in the sum of $9,000.00; that said damage was all occasioned by the negligence of the respondent, and especially respondent was negligent and careless in the following particulars, to-wit:

"1. In attempting to dock the vessel head down stream in the then state of the tide and currents;

"2. In the manner in which he attempted to turn the vessel around after leaving the dock;

"3. In misjudging the strength and effect of the tide and current that he would encounter in turning the vessel around in the manner he attempted;

"4. In misjudging the distance between the dock and the shoal and the width of the navigable water;

"5. In failing to order one or both anchors dropped to keep said vessel from going aground;

"6. In not backing away from the dock when the spring line was cast off, instead of going ahead, and in not turning the vessel around by means of so backing her out instead of in the manner he attempted;

"7. In grounding the vessel upon said shoal as alleged;

"8. And all of said acts of negligence caused or contributed to the said stranding and damage."

The court found and decreed that Matheson was negligent in navigating the ship, as follows:

"In failing to keep the motor-ship in the channel of the river;

"In misjudging the location and extent of the shoal on the north bank of the river;

"In misjudging the distance between the dock and the shoal;

"In grounding the vessel upon said shoal;

"In failing to order one or both anchors dropped to keep said vessel from going aground."

The court held that "libelant is entitled to recover of and from the respondent such damages as it incurred in employing towboats and such incidentals as were necessary to pull the motor-ship off the bar of the shoal, including

the cost of employing towboats to come from Portland to its assistance," but is not entitled to recover for damages to the ship's plates. The amount of expenses and loss has been reached by agreement of the parties as $1,-169.11 and is not in dispute on this appeal.

The court also made findings of facts as follows:

"That shortly prior to said stranding the said pilot had attempted to dock the said vessel at the Port of Astoria dock in the Columbia River, but failing to do so, due to the then state of the tide, he attempted to turn the vessel around in the channel by going ahead on a port helm with the intention of bringing the vessel back again to the dock, starboard side to, and head up stream. The channel at this point between the dock and the shoal on which the ship stranded is about 1800 to 2000 feet wide, and is of ample width to turn ships of the size and character of the 'Pacific Commerce' with safety, and a great many ships have been turned there in safety.

"That the weather was clear, it was broad daylight, there was no wind sufficient to affect the movement of the vessel, and the tide was commencing to ebb. The Port of Astoria dock is on the south side of the channel. Desdemona Sands are on the north side of the channel. The ebb tide sets in a westerly direction, down stream, or a northwesterly direction from the dock toward the Sands, according to the varying stages of the tide, but there were no tidal or any other conditions existing to prevent the safe turning of the vessel, had she been properly handled.

"That the said pilot's commands were all promptly and reasonably obeyed, the vessel's helm and machinery all worked properly, the pilot's handling of the vessel was not in any way interfered with by the master, who relied upon the pilot, with his superior knowledge of the local conditions and waters, to turn the vessel as he deemed best,—the master merely asking the pilot whether there was plenty of water in which to make the turn, and the pilot responding that there was. Notwithstanding this, the pilot, maneuvering the vessel ahead on a port or hard-a-port helm, did not make the turn successfully, but ran the ship aground on Desdemona Sands approximately 1800 to 2000 feet away from the dock from which he had started, and approximately opposite thereto. The pilot did not at any time order the anchors dropped, nor were they dropped, and the ship took the sands with engines at full speed ahead. The pilot admitted that Desdemona Sands at the place where he grounded had shoaled out into the channel a little further than he had thought they extended."

As stated in the brief of appellant,

"The assignments of error, taken as a whole, disclose one primary issue, followed by one subordinate alternative issue, which may be stated as follows:

"1. Under the undisputed facts of this case, excluding testimony or evidence which is reasonably conflicting, was actionable negligence established against the appellant?

"and

"2. If actionable negligence was established, then was not the appellee also negligent in particulars proximately contributing to the grounding, requiring a division of damages?"

It is admitted that there was ample room in the channel to successfully turn the vessel as attempted. Nevertheless, the ship was grounded on a shoal 1,800 feet distant from the pier where the turning maneuver was commenced. The facts immediately suggest negligence on the part of the pilot. This thought finds support in a letter written by appellant right after the accident, addressed to the State Board of Pilot Commissioners, and admitting his fault, as follows: "Report of grounding of the m/v Pacific Commerce. While attempting to turn the said vessel around off the Astoria Port dock, I let her get too far over on the north side of the channel. At about 2:36 P. M. she took the ground on her port bow and swung against the sands on her port side. I tried to work her off but without success. This grounding was no fault of the ship's maneuvering, and wish to state the Captain or his officers were in no way at fault, it just being a misjudgment on my part regarding the set of the tide. I first came in to Pier No. 1 head downstream, but the stern of the vessel set off, so I had to turn her around. While attempting this she took the ground."

In considering the question of appellant's negligence, it must be remembered that he was charged with the duty of being familiar "with all dangers that are permanently located in the course of the river, as sand-bars, snags, sunken rocks or trees, or abandoned vessels or barges." Atlee v. Packet Company, 21 Wall. (88 U. S.) 389, 396, 22 L. Ed. 619. "All this he must know and remember and avoid." Id.

From the situation as we have seen it to be, therefore, "we must infer fault unless good proof exculpates the navigator." Louis-Dreyfus v. Paterson Steamships (C. C. A. 2) 43 F.(2d) 824, 826, 72 A. L. R. 242.

To relieve himself from liability, or to obtain a division of the damages, appellant contends: (1) That the turning of the vessel in the channel would have been successfully accomplished had not its captain stopped the engines for about one minute while passing a ship at berth, thus lengthening her turning radius; and (2) that certain buoys did not correctly mark the edge of the shoal in question.

If the engines were in fact stopped for approximately one minute, as claimed by appellant, nevertheless appellant continued on his course, considering it safe to do so. In any event, in his report, above quoted, he absolved the captain and the ship's officers from fault. The court found that "the pilot's handling of the vessel was not in any way interfered with by the master." We see no error in this finding.

So far as the record discloses, only appellant testified to the alleged erroneous location of the buoys. Whether or not this was a fact and a cause which contributed to the grounding of the vessel has been determined adversely to appellant by the trial court, and we think properly so. In view of the duty imposed on appellant of knowing the true location and extent of the shoal, and his admission that he knew it gradually shifts from year to year, we believe the court correctly found him negligent "in misjudging the location and extent of the shoal on the north bank of the river," and "in grounding the vessel upon said shoal."

It is contended that the use of a wire cable in attempting to tie up at the pier, instead of a Manila rope spring line which was requested by appellant for that purpose, "unquestionably contributed to the vessel being placed in the awkward position from which it was necessary to attempt to extricate her, resulting in the maneuver under discussion." We fail to see how this fact contributed in any way to the grounding of the vessel. Appellant admits that after the line was cast off the vessel was still in a perfectly safe position to go ahead and make the turn and that he considered it safe to do so.

We believe this case calls for application of the well-settled rule that the trial judge's findings, on conflicting evidence heard by him, will not be disturbed on appeal unless clearly against the weight of the evidence. Some of the testimony in this case was by deposition, but most of it was in open court. In The Warrior, 54 F. 534, 537, this court said: "In this case the most of the evidence was taken before the district judge, and it would seem to be a proper case for the application of the rule that on appeal in admiralty from the district court, where questions of fact are involved depending upon conflicting testimony, the decision of the district judge, who has had the opportunity of seeing the witnesses, hearing them testify, and judging of their credibility, will not be reversed unless clearly against the weight of evidence. [Citing cases.]"

The same rule was announced by Judge Lurton in City of Cleveland v. Chisholm (C. C. A. 6) 90 F. 431, 434. Likewise pertinent and controlling here is the statement of the Supreme Court in The Ludvig Holberg, 157 U. S. 60, 71, 15 S. Ct. 477, 481, 39 L. Ed. 620: "If there be any evidence to support the findings, as there undoubtedly is, they should not be disturbed." See, also, Chesapeake Lighterage & Towing Co., Inc., v. Baltimore Copper Smelting & Rolling Co. (C. C. A. 4) 40 F.(2d) 394, 395.

We have, however, examined all of the evidence in the record, and agree with the trial court that it is sufficient to sustain the charge of negligence against appellant Matheson, and that there is no reason why a decree of divided damages should be entered.

The decree is therefore affirmed.