PUGET SOUND TUG & BARGE COM-
PANY, Plaintiff,

v.

UNITED STATES of America, as Owner
of the SS LINDENWOOD VICTORY,
Official No. 248278, Defendant.

Civ. No. 7704.

United States District Court
W. D. Washington, N. D.
May 20, 1969.

Martin P. Detels, Jr., of Detels, Draper & Marinkovich, Seattle, Wash., for plaintiff.

Eugene G. Cushing, U. S. Atty., Luzerne E. Hufford, Jr., Asst. U. S. Atty., Seattle, Wash.; John F. Meadows, Attorney in Charge, Admiralty & Shipping Section, Frederick F. Burgess, Jr., Atty., Admiralty and Shipping Section, U. S. Dept. of Justice, San Francisco, Cal., for defendant.

## MEMORANDUM DECISION

BEEKS, District Judge.

This case involves a collision between a tug, the THOR, and the vessel it was assisting, the LINDENWOOD VICTORY. Plaintiff, bareboat charterer of the THOR, brought suit to recover the cost of raising and repairing its tug; as subrogee of the loss sustained by an independent compass adjuster who was on the tug at the time of the casualty which was paid by plaintiff; and for damages for detention. Defendant, owner of the towed vessel, counterclaimed for damages sustained by its vessel. The facts of the case, which are largely undisputed, are as follows:

Plaintiff was requested to provide the services of a tug to assist the LINDEN-WOOD VICTORY from the inner berth at Pier 91, West, to Pier 90, Berth 6, in Seattle. Plaintiff dispatched its tug RETRIEVER. Upon reporting alongside the LINDENWOOD VICTORY the

RETRIEVER was requested by the pilot of the LINDENWOOD VICTORY to radio plaintiff for a second tug. Enter THOR. The pilot of the LINDEN-WOOD VICTORY directed the RE-TRIEVER to make up on the port bow, and the THOR to make up a single towline on the stern. The lines of the two tugs were passed aboard the LINDEN-WOOD VICTORY and made fast by the ship's crew, the THOR's line being placed over a bollard on the port stern of the tow. No explicit mention of whether the engine of the LINDENWOOD VICTORY would be used in the maneuver was made by personnel of any of the three vessels.

The LINDENWOOD VICTORY was unberthed without event, and successfully maneuvered past the vessels moored astern at the outer berths of Pier 91 to a position where its stem was some distance southerly of the south faces of Piers 90 and 91. During this period, and until the casualty, the only engine order signal given by the LINDEN-WOOD VICTORY to the THOR was for the THOR to tow astern.

When she cleared the outer end of Pier 91 the LINDENWOOD VICTORY's engine was ordered slow astern. Some four minutes thereafter, at approximately 1423, the engine was ordered half astern. No signals were given to the tugs that the engine was being used. The THOR's own "prop wash" prevented her crew from realizing that the LINDENWOOD VICTORY's engine was being used. At about the same time the engine was ordered half astern the RE-TRIEVER was directed to shift from the port bow to the starboard bow to straighten the LINDENWOOD VIC-TORY for entry to Pier 90, and she began to do so.

At this time the THOR was pulling dead astern on a short towline of some sixty to seventy feet. At about 1424, having seen the RETRIEVER's changed position, the THOR changed course toward the southwest quadrant, to port of the axis of travel of the LINDEN-WOOD VICTORY, to assist in straightening her for entry to Pier 90. The THOR's maneuver was entirely proper in the circumstances, but it did not alter the LINDENWOOD VICTORY's axis of travel because her engine was being used, and she began to overrun the THOR. Realizing that the THOR was in difficulty, the pilot of the LINDEN-WOOD VICTORY ordered the engine stopped at approximately 1424. At approximately 1425 the astern movement which the LINDENWOOD VICTORY exerted on the short towline pulled the stern of the THOR against the port side of the LINDENWOOD VICTORY, and the THOR capsized and sank at a point approximately 75 feet forward of the stern shortly thereafter.

Plaintiff contends the LINDENWOOD VICTORY was at fault in, *inter alia,* using her engine and moving astern at excessive speed under the circumstances then existing, without notice or warning to her assisting tugs. Defendant denies this contention and alleges that the THOR was unseaworthy in that the brake of the towing machine was defective, and that the crew was inattentive and/or incompetent in failing to release the brake of the towing machine to free the towline. These contentions will be discussed *seriatim.*

■ Generally, a tug assisting a vessel in a docking or undocking maneuver is held to know that the engine may be reasonably used without notice thereof to the tug. Therefore, I assume and so find that the THOR knew that the LINDENWOOD VICTORY might use her engine at some point in the maneuver. This finding, however, does not resolve the dispute. The THOR was not bound to anticipate that the LINDEN-WOOD VICTORY might make an unreasonable use of her engine, which is what plaintiff asserts she did. Therefore, the critical question is whether *this* use of the engine under *these* circumstances was negligent, for if one salient principle emerges from the authority relied upon by the parties it is this: A vessel being towed is under a duty to see that its maneuvers do not

place the tug in a position of peril, and if the vessel engages in an unexpected maneuver which it could foresee may place the assisting tug in a position of peril it is liable for the damages resulting therefrom.

■ In these circumstances the pilot of the LINDENWOOD VICTORY, having directed the RETRIEVER to proceed to the starboard bow to straighten the vessel, should have foreseen, if in fact he did not, that the THOR would pull to the southwest to assist in the straightening maneuver. In light of the THOR's probable course, he should also have foreseen that the additional impetus given the LINDENWOOD VICTORY's sternway by the use of her engine, particularly the increase in power and momentum to half astern, would cause her to rapidly overrun the THOR on its short tow, thereby placing the THOR in a position of peril. Nevertheless, he did not order the engine stopped until after he observed that the THOR was already in difficulty; the order came too late to arrest the LINDENWOOD VICTORY's power. Under the particular circumstances here present, I find that the pilot of the LINDENWOOD VICTORY was negligent in failing to foresee that the use of her engine in the existing conditions would place the THOR in a position of peril.

■ However, it cannot be said that such negligence was the sole proximate cause of the collision. The evidence adduced at the trial clearly reflects that the THOR did not release its brake, which would have allowed the towline to run free, although it had time to do so. It is not necessary to precisely determine whether such failure resulted from a defect in the brake mechanism, or from inattention and/or incompetence of the crew, or from a combination of these factors; one or more of these factors was present, and such fault clearly contributed to the collision.

In light of these findings it is not necessary to rule upon the other contentions made by the parties.

Plaintiff is entitled to damages in the amount of $28,553.46, computed as follows:

| | |
|---|---|
| Raising and repairs of THOR | $50,781.87 |
| Loss of Shrock's gear | 446.06 |
| Damages for detention (charter hire) | 7,000.00 |
| SUBTOTAL | $58,227.93 |
| Less damage to the LINDENWOOD VICTORY | $ 1,121.00 |
| TOTAL | $57,106.93 |

———◆———

■ Since the collision was caused by mutual fault, each party is responsible for one-half of the total damage. The expense of $662.74 for the United States Salvage Association's survey is not a recoverable element of damages and is disallowed.

Counsel for plaintiff may prepare and submit a form of findings of fact, conclusions of law and judgment in accordance herewith within fifteen days of the date hereof. Each party shall bear its own costs.