**WATERMAN STEAMSHIP CORPORATION, a corporation, Plaintiff,**

v.

**The UNITED STATES of America, and Alaska Barge & Transport, Inc., a corporation, Defendants.**

Civ. No. 7958.

United States District Court
W. D. Washington, N. D.

Oct. 3, 1969.

Donald Voorhees, of Riddell, Williams, Voorhees, Ivie & Bullitt, Seattle, Wash., for plaintiff.

Eugene G. Cushing, U. S. Atty., Albert E. Stephan, Asst. U. S. Atty., Seattle, Wash., John F. Meadows, Atty. in Charge, West Coast Office, Admiralty & Shipping Section, Allen J. Weiss, Atty., Admiralty & Shipping Section, U. S. Dept. of Justice, San Francisco, Cal., for defendant the United States.

Martin P. Detels, Jr., of Detels, Draper & Marinkovich, Seattle, Wash., for defendant Alaska Barge & Transport.

## MEMORANDUM DECISION

BEEKS, District Judge.

This is an admiralty action brought under 46 U.S.C. § 741 et seq. and 46 U.S.C. § 781 et seq. by Waterman Steamship Corporation (Waterman), owner of the steamship DE SOTO (DE SOTO), against the United States and Alaska Barge and Transport, Inc. (Barge Co.) to recover repair costs and miscellaneous expenses for damage sustained by DE SOTO. Barge Co., as owner of the Miki Miki type diesel tug MAKAH, has counterclaimed against Waterman for damage sustained by MAKAH.

DE SOTO, which was under time charter to United States for the carriage of military cargo belonging to United States, was anchored in Da Nang Bay, South Vietnam, on the morning of October 22, 1966. The Master of DE SOTO was informed that the vessel was to shift from its anchorage to a berth along the south side of Pier 2 at Da Nang. To facilitate the shifting the Master of DE SOTO was required by United States to use a pilot employed by United States. United States also provided three tugs, one of which was MAKAH, to be under the direction and control of the pilot.

At 0800 on October 22, 1966 the pilot boarded DE SOTO which weighed anchor at 0826. As the vessels approached Pier 2 the pilot positioned MAKAH on the port quarter of DE SOTO, opposite the area between #4 and #5 hatches, so that its stem was pushing against the hull of DE SOTO, with damage resulting to both vessels. At 0926 DE SOTO was secure at Pier 2.

Pier 2 and the immediate approach thereto was located in an open roadstead with the swell of the sea from the north. The mouth of Song Han River was located immediately south of Pier 2 with the current of the river from the south meeting the swell of the sea from the north head on in an area just outside Pier 2.

This meeting of Song Han River, swollen by the monsoon rains, and the ocean swell, characterized as a long swell cresting at a height of four to five feet, caused considerable turbulence off Pier 2.

The Master of DE SOTO had not previously made the approach to Pier 2 since it had been constructed subsequent

to his one prior visit to Da Nang and he was unaware of the hazards and risks involved in the transit. When United States placed a pilot aboard DE SOTO, the Master thereof, in the absence of express knowledge to the contrary, was entitled to rely that the pilot was familiar with all the conditions, perils and risks inherent in the transit he was to undertake and possessed of necessary expertise to carry out the transit without damage to the vessel. Matheson v. Norfolk & North Am. Steam Shipping Co., 73 F.2d 177 (9th Cir. 1934).

■ The shift as made may have been required by military exigency. I do not know. Based on the testimony before me, however, I can only conclude that it shouldn't have been made under the conditions then existing or in the manner it was accomplished. The pilot was or should have been aware of the swell condition and the risk involved. By positioning MAKAH so that it was pushing against the hull of DE SOTO, as opposed to pulling from the starboard side which I find to be a feasible alternative, the pilot took the risk that damage might result. The condition of sea encountered and the manner in which the tug was employed rendered damage inevitable.

While it is argued that the Master of DE SOTO should have recognized the hazard and taken action, the fact was that the sea was relatively calm at the anchorage and the heavy swell became apparent only upon approaching the pier. If the Master had taken action at that time, such as casting off MAKAH, it is clear that DE SOTO would probably have drifted down onto the pier resulting in severe damage to both dock and vessel.

Thus I find that the pilot either failed to properly ascertain the risks involved or recognized the hazards and elected to proceed irrespective thereof, and in either event the United States was responsible to Waterman for damages in the stipulated sum of $21,000.00.

■ I do not find MAKAH at fault. It was contended by Waterman and Unit-

ed States that the tug was improperly equipped because of the inadequacy of its stem rubber fendering system. Regardless of the presence of a rubber or manila fender, in these conditions, the tremendous force of the sea would compress either type of fender and substantial damage would occur in the heavy surge after full compression was attained. The claim of Waterman against Barge Co. is dismissed.

I find no fault in the actions of the Master of DE SOTO and therefore dismiss the claim of Barge Co. against Waterman.

Waterman shall recover its costs against United States. Barge Co. and United States shall bear their own costs. This memorandum decision shall constitute the Court's findings of fact and conclusions of law under F.R.Civ.P. Rule 52(a). Counsel for Waterman may prepare a decree in accordance herewith and submit the same within fifteen days of the date hereof, giving ten days notice to all interested parties.