UNITED STATES of America, Plaintiff-Appellee,

v.

Emery H. JOYCE, Defendant-Appellant.

No. 72-2002.

United States Court of Appeals, Ninth Circuit.

Nov. 18, 1974.

As Amended Feb. 10, 1975.

hand, salvage a footnote from that opinion in order to show that the language in *McGarry* was dictum.

Charles E. Watts (argued), Moriarty, Long, Mikkelborg & Broz, Seattle, Wash., for defendant-appellant.

Richard J. McCarthy (argued), Admiralty & Shipping, U. S. Dept. of Justice, San Francisco, Cal., for plaintiff-appellee.

Before HAMLIN,* BROWNING and WALLACE, Circuit Judges.

## OPINION

WALLACE, Circuit Judge:

Joyce was employed as a pilot by the United States to maneuver its vessel, the S.S. Lindenwood Victory, from Pier 91 to Pier 90 in the Seattle, Washington harbor. During this maneuver, the Thor, one of two tugs assisting in the operation, collided with the Lindenwood Victory, capsized and sank. In a separate lawsuit involving this collision, the Thor and the Lindenwood Victory were both held mutually at fault and, under

* Honorable Oliver D. Hamlin was on the original panel and agreed to the disposition but died prior to the filing of the opinion.

the divided damages rule, the United States was required to pay the owners of the Thor $28,553.46. Puget Sound Tug & Barge Co. v. United States, 305 F.Supp. 570 (W.D.Wash.1969). The United States instituted this indemnity action against Joyce to recover the amount it was required to pay for damage to the Thor. The district judge, sitting in admiralty without a jury, found Joyce negligent and awarded judgment in favor of the United States. Joyce appeals and we affirm.

## I. FACTS

In the move from Pier 91 to Pier 90, Joyce directed the tug Retriever to make up on the port bow of the Lindenwood Victory and directed the Thor to make up on the stern. There was no radio communication between Joyce and the Thor; Joyce was to use the ship's whistle for signals to the Thor in the moving operation. Joyce intended to use the engines of the Lindenwood Victory during the operation but in the discussion prior to the maneuver, he failed to tell representatives of the tugs of his intention.

After the last line of the Lindenwood Victory was cast off, Joyce ordered the engines of the ship slow astern. Approximately four minutes later, he ordered them half speed astern. Joyce gave no signals from the Lindenwood Victory to either tug that the engines were being used. There was a short tow line between the Lindenwood Victory and the Thor. The stern of the Thor was facing the stern of the Lindenwood Victory causing its wash to approach the Lindenwood Victory. Because of this and because the propeller of the Lindenwood Victory was wholly submerged, the Thor was unable to detect that the engines of the Lindenwood Victory were in operation. Approximately one to two minutes after the engines were ordered half speed astern, the Thor, which had been pulling astern in an easterly direction, changed positions to the west of the axis of travel of the Lindenwood Victory. The force exerted on the short tow line by the astern movement of the

Lindenwood Victory pulled the Thor up against the side of the Lindenwood Victory and the Thor capsized and sank. The approximate time between the ordering of the engines half speed astern and the capsizing of the Thor was two minutes.

The district court found that Joyce was negligent in ordering the engines astern with a tug towing astern on a short tow line without advising the operators of the tugs either beforehand or by signaling.

## II. THE *PENNSYLVANIA* RULE

The district court made a finding of fact that the captain of the Lindenwood Victory failed to station a ship's officer at the stern of the vessel during the redocking maneuver. Joyce argues that this conduct constitutes a violation of both 33 U.S.C. § 221 and 46 U.S.C. § 223. Because these rules are intended to prevent collisions, he asserts, the United States should be subject to the heavy burden imposed by the rule of The Pennsylvania, 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1874):

> [W]hen, as in this case, a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case *the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been.* Such a rule is necessary to enforce obedience to the mandate of the statute.

*Id.* at 136, 22 L.Ed. 148 (emphasis added).

 If the *Pennsylvania* Rule applies, the United States, to recover fully from Joyce, must show that the violation of the statute "could not reasonably be held to have been a proximate cause of the collision." States Steamship Co. v.

Permanente Steamship Corp., 231 F.2d 82, 87 (9th Cir. 1956). Joyce contends that the United States failed to meet this burden because the district court found that "[t]he presence of such an officer on the stern during [the redocking operation] might have made it possible for LINDENWOOD VICTORY to cut or cast off the tow line, or initiate an engine maneuver" in time to prevent the accident.

■ The district court did not find the *Pennsylvania* Rule applicable, however, and we agree. There was no statutory violation of either 33 U.S.C. § 221 or 46 U.S.C. § 223. Section 221 states: "Nothing in these rules shall exonerate any vessel, or the owner or master or crew thereof, from the consequences . . . of any neglect to keep a proper lookout . . . ." The evidence was undisputed, however, that crew members were posted at the stern acting as lookouts. Failure to station an officer rather than a crewman at the stern does not violate section 221.

■■ Section 223 specifies the minimum number of officers to be carried aboard a ship the size of the Lindenwood Victory. Joyce contends that the Lindenwood Victory was short one licensed mate and that for this reason, no officer was stationed at the stern in a position to avoid the accident by ordering the cutting of the tow line. However, section 223 was not violated in this case. It does not require the full complement of licensed mates if the vessel is engaged in a run of less than four hundred miles. The accident occurred while the Lindenwood Victory was being transferred from Pier 91 to Pier 90.[1] The United States is thus not subject to the great burden imposed by the *Pennsylvania* Rule.

Although failure to station an officer on the stern may well have amounted to negligence, the district court specifically found "that the failure to station such an officer on the stern of LINDENWOOD VICTORY did not contribute to the collision between LINDENWOOD VICTORY and THOR." This finding is not clearly erroneous.

## III. EXPERT TESTIMONY

■ The district court found that Joyce was negligent in failing to advise the tug operators that he was going to use the engines of his vessel and in failing to foresee that the astern movement of the Lindenwood Victory under its own power would cause it to overtake and collide with the Thor. Joyce contends that this finding is erroneous because there was no expert testimony that Joyce committed professional malpractice.

We have said that:

> Expert testimony is appropriate when the factual issue is one which jurors would not ordinarily be able to determine without technical assistance. E. L. Farmer & Co. v. Hooks, 10 Cir., 239 F.2d 547, 553. On the other hand, when the subject of inquiry is one which common knowledge would enable one to decide, it is not a proper subject for expert testimony. Schillie v. Atchison, Topeka & Santa Fe Ry. Co., 8 Cir., 222 F.2d 810, 814. It is for the trial court in the exercise of a sound discretion to determine whether expert testimony is appropriate under the particular circumstances of the case.

Duff v. Page, 249 F.2d 137, 140–141 (9th Cir. 1957) (dictum). Similarly, a commentator has stated:

> [The expert has] a power to draw inferences from the facts which a jury

---

1. Joyce also alleges a violation of 46 U.S.C. § 222, but this issue is not included in the pretrial order which lists the issues of fact and law remaining for trial. The pretrial order controls the subsequent course of the action and the parties are bound by their agreement to limit the issues to be tried. Fed. R.Civ.P. 16; *see* Fowler v. Crown-Zellerbach

Corp., 163 F.2d 773, 774 (9th Cir. 1947) (alternate holding). Since this issue was not listed in the pretrial order or raised later at trial (where error might have been avoided), we choose not to entertain it on appeal. Westinghouse Elec. Corp. v. Weigel, 426 F.2d 1356 (9th Cir. 1970).

would not be competent to draw. To warrant the use of expert testimony, then, two elements are required. First, the subject of the inference must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman.

C. McCormick, Handbook of the Law of Evidence 13, at 29 (2d ed. E. Cleary general editor 1972) (footnote omitted).

A trier of fact of common experience, education and training could decide the negligence question presented by this case without the benefit of expert testimony. This issue does not involve technical aspects of a pilot's trade, such as wind and tide currents, hidden obstacles in the harbor or navigation through perilous waters. The issue was whether a reasonable pilot should have forewarned the operators of the two tugs that he was going to use his engines and should have foreseen that the tug pulling on the stern of the vessel with a short tow line would be endangered by use of the engines half speed astern. The need for expert testimony does not arise in this case.[2]

## IV. *RYAN* INDEMNITY THEORY

Joyce also alleges that the district court erroneously applied the indemnity principle of Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). The district judge held that Joyce must indemnify the United States because he breached "his implied warranty of workmanlike service to provide skilled, expert, and professional pilotage services" but he did not cite any authority for this conclusion. Both parties argue the relative merits of applying the *Ryan* indemnity theory to a pilotage case but we need not determine whether *Ryan* should be extended this far. The issue can be resolved by application of negligence law. City of Long Beach v. American President Lines, Ltd., 223 F. 2d 853 (9th Cir. 1955); *cf.* Matheson v. Norfolk & North American Steam Shipping Co., 73 F.2d 177 (9th Cir. 1934).

In *City of Long Beach*, we applied traditional negligence concepts to a compulsory pilotage case. (Joyce was a compulsory pilot, as distinguished from a hired pilot.) We held that while the pilot and his employer might not be liable in contract to the piloted vessel, they owed a "duty of care" to the vessel owner. We also held that the pilot's employer "could be held in tort for negligence of the pilot." In applying these common law concepts we said:

We believe that the foregoing principles are universally applicable on land. We see no reason to apply any other rules in admiralty.

223 F.2d at 857 (footnote omitted).[3]

2. Joyce cites several Fifth Circuit cases in which expert testimony was received regarding pilot negligence. Bethlehem Steel Corp. v. Yates, 438 F.2d 798 (5th Cir. 1971); Mariblanca Navegacion, S.A. v. Panama Canal Co., 298 F.2d 729 (5th Cir. 1962); Panama Canal Co. v. Sociedad de Transportes Maritimos, S.A., 272 F.2d 726 (5th Cir. 1959); Victorias Milling Co., Inc. v. Panama Canal Co., 272 F.2d 716 (5th Cir. 1959); Seaboard Airline R. Co. v. Pan American Petroleum & Transport Co., 199 F.2d 761 (5th Cir. 1952), cert. denied, 345 U.S. 909, 73 S.Ct. 649, 97 L.Ed. 1344 (1953). We have examined these cases. They do not alter our view that there was no need for expert testimony in the instant case.

3. In Gilmore and Black's admiralty treatise the authors state that the "pilot, of course, is personally liable for his own negligence . . . ." G. Gilmore & C. Black, The Law Of Admiralty § 7–16, at 430 (1957). Similar statements may be found elsewhere:

To hold the pilot liable, he must be shown to have been negligent, since negligence is the *sine qua non* of liability.

A. Parks, Law of Tug, Tow and Pilotage 482 (1971).

But a pilot is responsible only for his personal negligence, and that must be affirmatively shown.

The Manchioneal, 243 F. 801, 806 (2d Cir. 1917). The Fifth Circuit has also applied negligence concepts to pilotage cases. Bethlehem Steel Corp. v. Yates, 438 F.2d 798 (5th Cir. 1971); Panama Canal Co. v. Sociedad de Transportes Maritimos, S.A., 272 F.2d 726 (5th Cir. 1959).

**1132**

Here, the district court found that Joyce was negligent and therefore must indemnify the United States. Our holding in *City of Long Beach* requires that we affirm this ruling.

### V. COLLATERAL ESTOPPEL

Joyce was not a party to the suit between the United States and the Thor, although he was called as a witness. Much of the evidence introduced in that case was also introduced in the instant case. In his memorandum opinion, the district judge said:

> I considered all the evidence, which included much of the evidence introduced in Puget Sound Tug and Barge Co. v. United States, 305 F.Supp. 570 (W.D.Wash.1969). The additional evidence adduced here does not affect the soundness of the findings and conclusions of Judge Beeks as set forth in his opinion. I adopt them in so far as they are applicable here.

 Joyce argues that the district court erroneously applied the doctrine of collateral estoppel or res judicata when it "adopted" the findings of fact from *Puget Sound* because Joyce was not a party to that suit. We disagree. Had collateral estoppel or res judicata been applied, the trial judge would not have heard evidence in this case. The district judge conducted a complete trial and, after reviewing all the evidence submitted, found for the United States. He cannot be charged with erroneously applying res judicata or collateral estoppel simply because he reached the same conclusion as the trial judge reached in *Puget Sound*.

Although the district judge stated that he "adopted" the findings from *Puget Sound* to the extent of their applicability, we have carefully examined the record, including the findings in both cases, and conclude that this was not the type of "adoption" that requires reversal. It is true that the facts found in one case are not evidence of those same facts in another case. Mackay v. Easton, 86 U.S. (19 Wall.) 619, 632, 22 L. Ed. 211 (1873). Here they were not used as evidence. In Ball v. Paramount Pictures, Inc., 67 F.Supp. 1, 5 (W.D.Pa. 1946), rev'd on other grounds, 169 F.2d 317 (3d Cir. 1948), counsel attempted to use the facts found in one case as evidence in another. In the instant case no such attempt was made. The trial judge had before him much of the evidence that was introduced in *Puget Sound*. The record indicates that he made his own decision and did not abdicate his judicial responsibility. We find no grounds for reversal in his statement that he "adopted" the findings of the earlier case when it appears he meant that he agreed with them. .

Affirmed.