Shahi v. Donnelly, No. 496-9-06 Wrcv (Eaton, J., Apr. 14, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT
# WINDSOR COUNTY

| | | |
|---|---|---|
| **KAVEH SHAHI and LESLIE SHAHI** | ) | |
| | ) | **Windsor Superior Court** |
| **v.** | ) | **Docket No. 496-9-06 Wrcv** |
| | ) | |
| **DEIRDRE DONNELLY** | ) | |

### DECISION RE: CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs Kaveh and Leslie Shahi recovered a substantial jury verdict in 2006 against defendant's husband, Daniel Madden, for a variety of torts including timber trespass and invasion of privacy. Plaintiffs now seek to establish that defendant Deirdre Donnelly is liable for the same harm under theories of conspiracy, negligent supervision, and agency. The present question before the court is whether the 2006 jury verdict has any preclusive effects in this case.

Both parties have filed cross-motions for partial summary judgment. Plaintiffs seek a ruling that Donnelly is precluded from relitigating any of the issues that were decided adversely to her husband in the 2006 jury trial. Plaintiffs concede that Donnelly was not a named party in the jury trial but nevertheless argue that the verdict settled both the amount of damages and the fact that Madden committed the underlying torts. In plaintiffs' view, the only issue in this case is whether Donnelly should be held liable for the same harm.[1]

Donnelly argues that she was not a party to the 2006 jury trial. She points out that plaintiffs filed two different motions seeking to join her as a party to that proceeding, but that plaintiffs withdrew both motions before jury draw. She therefore seeks application of the general rule that "one is not bound by a judgment *in personam* in a litigation in which [s]he is not designated as a party or to which [s]he has not been made a party by service of process." *Taylor v. Sturgess*, 128 S.Ct. 2161, 2166–67 (2008) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)). Donnelly also argues that the 2006 judgment precludes plaintiffs from pursuing any of their current claims against her because plaintiffs should have raised these claims during the previous lawsuit.

For the following reasons, the court rules first that plaintiffs are not entitled to the application of issue preclusion in this case since Donnelly was neither a named party nor in privity with a party during the 2006 jury trial; the policy interests against duplicative litigation are outweighed here by the more general and "deep-rooted historic tradition that everyone should have his own day in court." 18A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4449. The court then concludes that the

---

[1] There are two other claims in the complaint (fraudulent conveyance and a request for declaratory judgment) that do not depend upon establishing Donnelly's liability for the underlying torts. Those claims are not relevant to this decision.

doctrine of claim preclusion does not prevent plaintiffs from bringing consecutive lawsuits against separate parties under the circumstances presented here.

I.

The first issue is whether plaintiffs are entitled to the application of issue preclusion in this lawsuit. Plaintiffs argue that the 2006 jury verdict resolves both the amount of damages and the fact that Madden committed the underlying torts. Plaintiffs acknowledge that defendant was not a named party during the jury trial but nevertheless contend that she participated in the case to such an extent that she became bound by the verdict.

The following facts are taken as true for the purposes of plaintiffs' motion for summary judgment.[2] Donnelly and Madden used to live at a townhouse in West Woodstock. During their time there, they were issued a no-trespass order preventing them from engaging in timber trespass in the common areas. There were also several incidents that resulted in complaints and criminal allegations against Madden. Donnelly was aware of the incidents and even went so far as to sue one of the complainants.

Donnelly and Madden then purchased the Densmore Hill property. Donnelly financed the work and Madden oversaw the construction. Madden's presence on the property resulted in damage to plaintiffs and the filing of two different lawsuits. The first, referred to here as *Shahi I*, settled out of court. Madden and Donnelly were represented by the same attorney in that lawsuit.

Madden was the only defendant named in the original complaint in the second lawsuit, known as *Shahi II*. Donnelly eventually entered an appearance in the case, however, in order to oppose plaintiffs' discovery requests for the couple's mortgage records. Donnelly was represented by a lawyer who also entered an appearance on behalf of Madden (even though Madden had previously represented that he was without funds to hire an attorney). Donnelly's attorney filed discovery motions, and she was treated in the

---

[2] Plaintiffs' motion for partial summary judgment was accompanied by a request for enlargement of time based on claimed deficiencies in defendant's responses to discovery. The background here is as follows. The case was commenced by filing in 2006. After a number of lengthy delays, the parties agreed to file any substantive motions on the preclusion issues by September 1, 2009. Both parties then filed cross-motions for partial summary judgment on the issue as well as responsive pleadings. *Numerous* other motions concerning discovery matters were also filed, and plaintiffs now contend that the discovery disputes have prevented them from establishing certain facts relevant to their arguments on the issue of privity. Plaintiffs accordingly seek a ruling that the present cross-motions should be denied as prematurely filed. See *Poplaski v. Lamphere*, 152 Vt. 251, 254–55 (1989) (explaining that summary judgment motions should be decided after there has been "an adequate time for discovery"). Plaintiffs have set forth the facts that they wanted more time to support, however, and it does not appear to the court that these facts would change the outcome of the cross-motions even if plaintiffs had more time to develop factual support for the allegations. The court has therefore assumed the allegations to be true for the purposes of the cross-motions. Plaintiffs' motion to enlarge the time for discovery is accordingly denied. See *Al Baraka Bancorp (Chicago), Inc. v. Hilweh*, 163 Vt. 148, 155 (1994) (summary judgment rulings were not premature where it was not shown that additional discovery would have changed the outcome). It has been more than three years since the case was filed. It is time to move this case forward.

case as an "interested party" on some pleadings and court notices. She was deposed. But she was not added as a party-defendant.

Plaintiffs filed two different motions seeking to join Donnelly as a party defendant. Donnelly opposed both motions, and plaintiffs subsequently withdrew both motions before the jury draw. The case was tried against Madden alone. The jury returned a verdict against Madden and the verdict was affirmed on appeal.

More than two years after the jury verdict, plaintiffs sought an injunction in the same docket that would have prevented Madden from coming within a certain distance of them or their property. Donnelly intervened in these proceedings and participated in evidentiary hearings in which she questioned the facts as they were found by the jury. She eventually appealed from the final order granting injunctive relief to plaintiffs.

Taken together, plaintiffs argue that these facts show that Donnelly participated in the underlying litigation either as an interested party or as an intervenor, and that she controlled the defense in the underlying trial by financing the litigation. Plaintiffs are presently seeking more information about the couple's finances in order to prove the extent of Donnelly's financial contributions to the *Shahi II* litigation. In the end, plaintiffs seek a ruling that Donnelly was either a *de facto* party or in privity with her husband during the *Shahi II* litigation.

The general principles of issue preclusion are well settled. Application of the doctrine requires proof that (1) preclusion is being "asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair." *Scott v. City of Newport*, 2004 VT 64, ¶ 8, 177 Vt. 491 (mem.) (quoting *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265 (1990)). Of these elements, the most important for purposes of the present case is whether preclusion is being asserted against one who was a party or in privity with a party during the earlier action.

Plaintiffs argue first that Donnelly had notice of the 2006 litigation and should have intervened in the case as a party-defendant if she wanted to contest the facts that were decided therein. This argument rests upon the murky assertion that nonparties may sometimes have a duty to intervene in lawsuits in which they may potentially be liable, and that preclusion is a consequence of a breach of that duty. It also bucks the "basic premise of preclusion" that "parties to a prior action are bound and nonparties are not bound." 18A Federal Practice and Procedure, *supra*, at § 4449.

Intervention, of course, is a permissive procedure that "permits a nonparty to become a party *when it wishes*." 18 Federal Practice and Procedure, *supra*, at § 4452 (emphasis added). There are no civil procedural rules that require mandatory intervention under any circumstances (the rules provide for mandatory joinder instead) and there are similarly no common-law rules that impose upon any person "the burden of

3

voluntary intervention in a suit to which he is a stranger." *Chase National Bank v. Norwalk*, 291 U.S. 431, 441 (1934). As such, attempts to blend preclusion doctrines with a theory of mandatory intervention are both awkward and fraught with due-process concerns. It is better to conclude that "a nonparty is not precluded from relitigating matters decided in a prior action simply because it passed by an opportunity to intervene." 18A Federal Practice and Procedure, *supra*, at § 4452; *Perez-Guzman v. Gracia*, 346 F.3d 229, 237–38 (1st Cir. 2003). "Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree." *Martin v. Wilks*, 490 U.S. 755, 765 (1989).[3] For these reasons, the court does not accept plaintiffs' invitation to forge a new rule of mandatory intervention that would bind Donnelly to the results of the 2006 jury trial.

Plaintiffs argue next that Donnelly should be bound by the judgment because she participated as an "interested person" during the pretrial discovery phase. The general rule, however, is that preclusion does not apply to persons who make appearances in lawsuits for the purposes of discovery or who testify as witnesses, because such limited participation does not equate to "a full and fair opportunity to litigate the claims and issues settled in that suit." *Taylor v. Sturgess*, 128 S.Ct. 2161, 2171 (2008). Formal designation as a party is usually the prerequisite, 18A Federal Practice and Procedure, *supra*, at § 4449, and here it is undisputed that Donnelly was not formally named as a party-defendant at the trial. As such, Donnelly's participation as an interested person alone does not support a finding of preclusion.

Plaintiffs also argue that Donnelly should be bound by the judgment because she did in fact intervene in the proceedings regarding the post-judgment injunction. Yet those proceedings occurred more than two years after the jury verdict was returned and after the appeal from the trial was completed. The post-judgment injunction also involves a wholly different facet of the case than the questions that were resolved in the jury trial. As such, the court is not persuaded that it would be fair to bind Donnelly to the judgment based on her intervention at such a late date. Indeed, it is the lateness of the intervention that distinguishes this case from *Watergate West, Inc. v. Barclays Bank, S.A.*, 759 A.2d 169 (D.C. 2000), upon which plaintiffs rely. That case stands for the proposition that a party may become bound by a judgment when it intervenes in the case shortly after judgment is issued, requests reconsideration of the judgment, files briefs with the trial court, appeals from the judgment, and actively participates in post-judgment enforcement proceedings. *Id*. at 179–80. It seems to the court that the hotel's involvement in *Watergate West* was materially more relevant to the underlying judgment than Donnelly's participation in the injunction proceedings here. As a result, the court does not find *Watergate West* to be persuasive support for the contention that Donnelly's participation was enough to bind her to the jury verdict.

---

[3] The holding of *Martin* was abrogated by Congress in 1991 as applied to employment discrimination actions filed pursuant to federal law. See 18A Federal Practice and Procedure, *supra*, at § 4452 (explaining legislative changes to the employment discrimination statutes and other statutes where the right to bring a *qui tam* action is terminated when a government action is brought). None of these statutory modifications affect the common-law principle discussed in *Martin* and applied here.

Plaintiffs argue last that Donnelly should be bound by the judgment because she was in privity with Madden during the trial. See *Lamb v. Geovjian*, 165 Vt. 375, 380 (1996) ("A privity relationship generally involves a party so identified in interest with the other party that they represent one single legal right.") (quotation omitted). Plaintiffs contend that Madden and Donnelly had identical interests in the matter by virtue of their marriage and the fact that they hold title to the Densmore Hill property as tenants by the entirety. Plaintiffs also argue that Madden and Donnelly were represented by the same attorney throughout the underlying case, that Donnelly financed the litigation, and that Donnelly participated as essentially a de facto party during the underlying litigation.

The primary thrust of these arguments is that Donnelly should be bound by the judgment because she "assumed control" over the litigation. This is an exception to the general rule that permits preclusion to be asserted against a nonparty who has already enjoyed a full and fair opportunity to litigate the claims asserted in the case. See 18A Federal Practice and Procedure, *supra*, at § 4451 (explaining that "a nonparty may participate in such a way as to become a de facto party, tacitly if not formally treated as such by all parties"). The general requirements for application of the exception are that the nonparty must have had adequate control of the litigation—i.e., "the opportunity to present proofs and argument"—and a sufficient interest in the result. *Taylor*, 128 S.Ct. at 2173.

The degree of control expected from the nonparty is "effective choice as to the legal theories and proofs to be advanced in behalf of the party to the action." Restatement (Second) of Judgments § 39, cmt. c. This exception normally applies in those situations in which a nonparty actually assumes control of the defense, as in the case of liability insurers, for example.

It is well-settled that "[l]esser measures of participation without control do not suffice." 18A Federal Practice and Procedure, *supra*, at § 4451. As such, "it is not enough that the nonparty supplied an attorney or is represented by the same law firm; helped to finance the litigation; appeared as an amicus curiae; testified as a witness; participated in consolidated pretrial proceedings; undertook some limited presentations to the court; or otherwise participated in a limited way. Even a nonparty who was 'heavily involved' may remain free from preclusion." *Id*. Thus, privity under the nonparty-control exception is not established merely because a nonparty paid the expenses of litigation, *Martin v. American Bancorp. Retirement Plan*, 407 F.3d 643, 652–53 (4th Cir. 2005), had the same attorney as the party and participated to a limited extent in the earlier litigation, *Benson & Ford, Inc. v. Wanda Petrol. Co.*, 833 F.2d 1172, 1174–75 (5th Cir. 1987), shared the same interests in the litigation as the named party, *White v. Kelsey*, 935 F.2d 968, 969–70 (8th Cir. 1991), or even had a close family relationship with the party. 18A Federal Practice and Procedure, *supra*, at § 4459. "It is essential that the nonparty have actual control." *Benson & Ford*, 833 F.2d at 1174.

The lead example of nonparty control is *Montana v. United States*, 440 U.S. 147 (1979). There, a federal contractor brought suit in state court contending that a state

gross receipts tax unconstitutionally discriminated against the federal government and the companies with which it dealt. The litigation was directed and financed by the federal government to the extent that the federal government told the contractor to file the complaint, reviewed and approved the complaint, paid the attorney's fees and costs, directed the appeal, and submitted briefs on appeal. After the state court affirmed the constitutionality of the tax, the federal government then filed the same lawsuit in federal court under its own name. It was accordingly held there that issue preclusion applied because the federal government had a sufficient "laboring oar" in the conduct of the state-court litigation. *Id.* at 155.

Here, plaintiffs have simply not adduced evidence showing that Donnelly was the one rowing the oars of the *Shahi II* litigation. Restatement (Second) of Judgments § 39. Plaintiffs have instead offered allegations—which, again, the court takes to be true for the purposes of this decision—that Donnelly shared Madden's interests in the litigation, paid for his attorney's fees, intervened in later proceedings on a restraining order, and had sued his adversaries in her own name in the past. Even if these allegations are taken together and viewed in their entirety, they simply do not sustain the contention that Donnelly was the one presenting "proofs and arguments" in the *Shahi II* litigation. *Taylor*, 128 S.Ct. at 2173. The allegations do not add up to the conclusion that she has already had her day in court on the claims asserted in the complaint. As a result, the court cannot conclude that Donnelly is bound to the judgment by virtue of privity.

In a variation on the same theme, plaintiffs contend that the cases of *In re Curtis*, 2006 VT 9, 179 Vt. 620 (mem.), and *In re St. Mary's Church Cell Tower*, 2006 VT 103, 180 Vt. 638 (mem.), support their contention that Donnelly is bound by the judgment because she had identical interests as Madden and was represented by the same attorney. Those cases were materially and legally different, however. There, a group of neighbors challenged a land-use permit issued to a wireless telephone company to install a cell-phone tower inside a local church steeple. After the courts upheld the permit, the same group of neighbors tried again by challenging the conditional-use permit issued to the local church itself. The Vermont Supreme Court held that the second challenge was barred by the doctrine of *claim preclusion* because the neighbors were challenging essentially the same permit. See 2006 VT 103, ¶ 3 (differentiating between claim preclusion and issue preclusion). In other words, the ruling there was that the neighbors "lost their chance to raise the conditional use issue when they decided not to raise it in the first appeal." *Id.*, ¶ 10.

Plaintiff's motion for summary judgment is about issue preclusion, not claim preclusion. If this court were to apply the holding of *St. Mary's Church Cell Tower* here, it would be saying that Donnelly lost her chance to have her own day in court when she opposed plaintiffs' attempts at joinder in the underlying case. This brings plaintiffs' arguments back to their fundamental flaw: plaintiffs voluntarily withdrew their motion to join Donnelly in the underlying litigation but are now acting as though their motion had been granted.

6

Plaintiffs contend essentially that Donnelly should have jumped in once she got her toes wet in the underlying litigation. But preclusion does not apply to nonparties with wet feet. Rather, preclusion applies only when litigants dive all the way in or are otherwise dragged into the water by someone who is already a party. Here, it is undisputed that no one dragged Donnelly into the water, and the record does not show anything more than that she stood on the side and put her toes in. As a result, plaintiffs are not entitled to the application of issue preclusion in this case.

The end result is that plaintiffs will have to prove anew in this lawsuit that Madden committed one or more torts *and* that Donnelly should be held liable for the commission of those torts under one of the theories articulated in the complaint *and* that plaintiffs are entitled to damages in some amount to be determined by the finder of fact. In proving these propositions, plaintiffs will not be permitted to introduce the *Shahi II* judgment as evidence of the facts found in that case. 18A Federal Practice and Procedure, *supra*, at § 4449 & n.28. The judgment is hearsay, and the rule is simply that "the facts found in one case are not evidence of those same facts in another case." *United States v. Joyce*, 511 F.2d 1127, 1132 (9th Cir. 1974); *Mackay v. Easton*, 86 U.S. (19 Wall.) 619, 632 (1873). If plaintiffs' claims are to be proven, they will be proven here based on the evidence presented here, and not based on the evidence presented at some other time in another case. No other procedure would give effect to Donnelly's right to have her own day in court.

Obviously there are inefficiencies in this procedure. It is duplicative, and there is a risk of inconsistent judgments. But it was plaintiffs who brought this upon themselves by choosing not to join Donnelly the first time around. Since it was plaintiffs who made that choice, it should be plaintiffs—and not Donnelly—who bear the consequences in this proceeding.

II.

Donnelly contends that the doctrine of claim preclusion prevents plaintiffs from bringing any claims against her arising out of the same harm as the 2006 judgment. Her argument is that plaintiffs elected their remedy when they chose to proceed against Madden alone, and that they are barred from litigating claims in the present case which they already had a full and fair chance to litigate in *Shahi II*.

The primary support for Donnelly's position derives from *Raymond v. Capobianco*, 107 Vt. 295 (1935). In that case, the plaintiff successfully sued the driver of an automobile for personal injuries sustained in a car accident. The plaintiff then sued the owner of the car on the grounds that the driver had been acting as the owner's agent at the time of the accident, and that the owner was therefore liable under a theory of respondeat superior. The question thus presented was whether the plaintiff elected to proceed solely against the driver in this first suit and was therefore barred from maintaining an action against the principal. *Id*. at 298.

7

The *Raymond* court reviewed several approaches from other jurisdictions before concluding that, in cases where the principal is liable only under a theory of respondeat superior, the principal and agent are only severally liable (rather than jointly and severally liable). It followed from that conclusion that the plaintiff elected his remedy when he chose to sue only the agent in the first lawsuit, and that the subsequent lawsuit against the principal was barred. *Id*. at 303. Donnelly contends that the same conclusion should apply here.

The problem is that the forcefulness of the *Raymond* holding has been eroded by the passage of time. The Vermont Supreme Court itself has described *Raymond* as based on "a doctrine which was out-moded at the time of its acceptance and which experience has shown is increasingly ill-adapted to the needs of modern practice." See *Daniels v. Parker*, 119 Vt. 348, 354–55 (1956) (expressly overruling *Raymond*). The rule in Vermont is now simply that "[w]here liability is joint and several, . . . a verdict in favor of one will not discharge the others." *Plante v. Johnson*, 152 Vt. 270, 274 (1989) (quotation omitted).

In other words, "[a] judgment against one person liable for a loss does not terminate a claim that the injured party may have against another person who may be liable therefor." Restatement (Second) of Judgments § 49. It is thus well-settled that a plaintiff may file separate and consecutive lawsuits against different persons liable for the same loss, and that the "entry of a judgment in the prior action does not bar the claims against other potentially liable parties." *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367 (2d Cir. 1995); 18 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4407. The theory of "election of remedies" announced by *Raymond* is now considered to be "obsolete." Restatement (Second) of Judgment § 49, cmt. a.

There are still slightly different rules in cases involving vicarious liability, but there is no longer a complete bar against the maintenance of separate and consecutive lawsuits against agent and principal. The general rules applicable here are that (1) a judgment against the injured person in the first action bars him from reasserting his claim against the second defendant and (2) a judgment in favor of the injured person is conclusive upon him as to the amount of his damages. Restatement (Second) of Judgments § 51. The exceptions to these general statements are not applicable here.

Under the Restatement approach, therefore, the only preclusive effect in this case is that the amount of damages recovered in the *Shahi II* trial limits the amount of damages that plaintiffs can recover in this trial. Thus, plaintiffs are not precluded from bringing their present claims against Donnelly, but they cannot recover more here than they did in the first trial, and Donnelly is free to argue for less. *Id*., cmt. d.

Donnelly argues more generally that the elements of defensive claim preclusion should apply here because Vermont abandoned the mutuality doctrine in *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 264–65 (1990), and thus she may assert preclusion against plaintiffs even though she was not a party to the earlier judgment. The flaw here

8

is that defensive claim preclusion is usually applied against parties who "litigated and lost" in the earlier proceeding. *Id*. Plaintiffs won. To the extent that the claim was decided in the earlier proceeding, any preclusion should run in plaintiffs' favor, rather than against them.

Donnelly is really arguing that plaintiffs should have joined her in the earlier litigation. But there is no requirement under the prevailing procedural rules that a plaintiff join every possible defendant in the same action. The rules regarding joinder of claims are mandatory, but the applicable rules governing joinder of parties are permissive. Accordingly, while injured plaintiffs often have strong incentives to bring actions against two or more potentially-liable defendants at the same time (because doing so reduces their litigation costs), it remains permissible to bring successive actions against different defendants for the same harm. "[N]either the rule against 'splitting' a claim nor the usual rules of joinder of parties require that [claims against separate defendants] be maintained in a single action." Restatement (Second) of Judgments § 51, cmt. b.

The posture would be different if plaintiffs had lost the underlying trial. Donnelly would then have taken easy recourse in the general rule that a judgment against the injured person in the first action bars him from reasserting his claim against another defendant liable for the same harm. See Restatement (Second) of Judgments § 51 (adding that there are exceptions to this general rule). But that is not what happened here.

Donnelly finally argues that there are different rules to be applied in cases of conspiracy. But her cases all appear to involve the circumstance where the party asserting a conspiracy litigated and lost in an earlier round of litigation. See, e.g., *Lamb v. Geovjian*, 165 Vt. 375, 380 (1996). The accepted rule instead seems to be that when two defendants are potentially liable for the same loss, the claims are regarded as separate, and successive suits can be maintained against the different parties even when the second suit is based upon an allegation of conspiracy. See, e.g., *Taylor v. Compere*, 230 S.W.3d 606, 610 (Mo. Ct. App. 2007). The court accordingly does not find the application of claim preclusion to be warranted here.

III.

In the course of reviewing the foregoing motions for partial summary judgment and the numerous pending discovery motions, it has become apparent to the court that there are a number of legal issues in this case that may be dispositive and yet do not require further factual development. Among these issues are (1) whether the claim for fraudulent transfer can be sustained where Donnelly and Madden took title to the Densmore Hill property as tenants by the entirety before the incidents underlying this case even occurred; (2) whether the claim for agency can be sustained where the alleged principal and the alleged agent are both tenants by the entirety in the same property; (3) whether, on the claim for negligent supervision, there was a "duty to control" here within the meaning of *Peck v. Counseling Serv. of Addison County, Inc.*, 146 Vt. 61 (1985) and *Sorge v. State*, 171 Vt. 171 (2000); and (4) whether public policy would support setting

aside the tenancy by the entirety even if Donnelly is "entirely innocent." See Plaintiff's Cross-Motion for Summary Judgment, filed Oct. 5, 2009, at 27.

The issues resonate particularly in the arena of discovery. The fraudulent transfer claim raises questions of law about the ability of a married couple to develop a parcel of property as tenants by the entirety. It also raises questions about the ability of a creditor to pierce the entirety through discovery requests aimed at uncovering the so-called "source" of various payments.

The pending discovery issues cannot be resolved without at least beginning to answer these questions. Yet at least some, and perhaps all, of these questions appear capable of resolution without further factual development. They may also have dispositive effects upon the litigation.

For these reasons, the court will entertain a second round of summary judgment motions, on the remaining claims in the case (and specifically the issues raised above), to be filed no later than May 17, 2010. Any oppositions must be filed by June 4, 2010. No replies, surreplies, or other pleadings will be accepted. The stay of discovery will remain in effect pending further order of the court.

## ORDER

(1)     Plaintiff's Motion for Enlargement of Time and Motion for Partial Summary Judgment on Issue Preclusion (MPR #34), filed September 1, 2009, is ***denied***.

(2)     Defendant's Motion for Summary Judgment (MPR #36), filed September 3, 2009, is ***granted in part and denied in part*** to the extent consistent with this decision.

(3)     Plaintiff's Motion for Summary Judgment (MPR #41), filed October 5, 2009, is ***denied***.

(4)     Either party may file a motion for summary judgment on the issues discussed in Part III of this opinion no later than May 17, 2010. Any oppositions must be filed by June 4, 2010. No replies, surreplies, or other pleadings will be accepted.

(5)     The stay of discovery remains in effect.

Dated at Woodstock, Vermont this _____ day of April, 2010.

_____
Hon. Harold E. Eaton, Jr.
Presiding Judge

10