**Lillian Yanks REHMAR,
Plaintiff-Appellee,**

v.

**Bernard L. SMITH et al.,
Defendants-Appellants.**

No. 74–1953.

United States Court of Appeals,
Ninth Circuit.

Oct. 15, 1976.

As Amended on Denial of Rehearing
Jan. 3, 1977

Rehearing En Banc Denied
June 6, 1977.

■■■■■■■■■■■■■■■■■

Richard Ernst (argued), Wilmington, Cal., for defendants-appellants.

Samuel R. Tannenbaum (argued), of Levy & Tannenbaum, Los Angeles, Cal., for plaintiff-appellee.

Before CHAMBERS, GOODWIN and WALLACE, Circuit Judges.

WALLACE, Circuit Judge:

Lillian Rehmar (Lillian) brought this action against two pension fund trustees to recover a survivor's benefit allegedly due her under a collectively-bargained pension plan. The district judge applied principles developed by California courts in interpreting insurance contracts and gave judgment to Lillian for $18,800 plus interest and costs. The trustees appealed claiming that the state law of commercial insurance contracts should not have been applied. We reverse and remand.

I. Facts

Sam Rehmar (Sam), a radio operator on merchant ships, worked under the terms of a collective bargaining agreement between

the shipowners and his union, the American Radio Association (Union). The agreement provides welfare and pension benefits for Union members. The agreement also prescribes eligibility rules. The benefits are funded by employer contributions to trust funds which are jointly administered by representatives of the Union and the employers in equal numbers pursuant to § 302(c)(5) of the National Labor Relations Act (Act), 29 U.S.C. § 186(c)(5).

Sam lived with Lillian for many years although they never obtained a marriage license or participated in a wedding ceremony. In 1969 Sam applied for pension benefits naming "Lilian Yanks" as beneficiary and designating her relationship to him as "friend." He did not retire at that time. On April 2, 1972, Sam again applied for pension benefits naming "Lilian Yanks" as his beneficiary but he omitted to state her relationship. On May 22, 1972, he submitted a "permanent data form" applicable to the welfare plan only, naming "Lilian Y. Rehmar" as his beneficiary and designating her relationship as "wife." He was to begin receiving his pension on June 1, 1972, but he died on May 30, eight days after he made his final submission.

Three types of survivor's benefits are payable to a Union member's designated "beneficiary" under the welfare and pension plans. Under the *welfare* plan, a deceased member's beneficiary is entitled to a lump sum payment. Lillian received $20,-000 under this provision.

The other two survivor's benefits are provided by Article IV, section 9, of the pension plan. Only the second benefit, described in subsection B, is involved in this case. That subsection provides:

In the event a pensioner . . . shall die before 60 monthly pension payments have accrued, payment of the monthly pension amount shall continue to be made up to a maximum of 60 payments including those accrued before the death of the pensioner:

(1) To his named beneficiary during his life if such beneficiary falls within the following classes:

(a) Spouse . . . ;

. . . . .

(c) Others who would fall within the term of "dependent" as defined under the ARA Pension and Welfare Plan.

(2) If no beneficiary has been named or if the named beneficiary is not in the classes designated in Paragraph (1) above, to the following persons, in the order named, and in equal shares where necessary:

(a) Spouse . . . ;

(b) Children . . . ;

(c) Others who would fall within the term of "dependent" as defined under the ARA Pension and Welfare Plan.

The Union Pension and Welfare Plan limits the term "dependent" to the children, wife or parents of the member.

Lillian applied for benefits under subsection B, but her application was denied on the ground that although she was a named beneficiary, she was not a member of one of the required classes.

Seeking review of that denial, Lillian filed a complaint for declaratory relief in California Superior Court. She claimed to be entitled to the survivor's benefit provided by Article IV, § 9B of the pension plan as the "designated wife of the decedent." The trustees petitioned for removal of the case to federal court and answered the complaint by denying that Lillian was entitled to any benefits under the pension plan. Lillian thereupon filed a memorandum asserting three grounds for entitlement to § 9B benefits. First, 9A and 9B are ambiguous and that ambiguity should be resolved against the trustees. Second, Lillian was a "dependent" of Sam and entitled to recover under § 9B(1)(c). Third, the trustees are estopped to deny Lillian benefits because they previously accepted without objection Sam's pension application designating Lillian as beneficiary, when she could not so qualify.

After a trial, the district judge gave a lump sum judgment to Lillian. He concluded that the trustees are estopped to deny Lillian recovery both because they em-

ployed the term "beneficiary" with different and confusing meanings in the welfare and pension plans and because they accepted Sam's applications naming Lillian as beneficiary. We hold that the district judge erred in applying principles of California insurance law which are either inapplicable, or, if otherwise applicable, inconsistent with federal labor policy.

## II. Jurisdiction under § 301

We must first determine whether the district court had jurisdiction of this case under § 301 of the Act, 29 U.S.C. § 185. The trustees argue that jurisdiction exists under § 301 and that the case must therefore be decided by reference to federal common law fashioned from national labor policy. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Lillian claims that § 301 is inapplicable, that the jurisdiction of the district court was based on diversity of citizenship, 28 U.S.C. § 1332, and that the court was therefore bound to apply state law.

Section 301(a) provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations, may be brought in any district court . . . without respect to amount in controversy or without respect to the citizenship of the parties.

29 U.S.C. § 185(a). The trustees argue that since the pension plan is part of a contract between an employer and a union and Lillian's suit is for a violation of that contract, jurisdiction over the suit exists under § 301.

 Lillian's first response is that § 301 is limited to suits between unions and employers and does not cover suits by beneficiaries of workers against the trustees of trust funds. This response is without merit. Section 301 jurisdiction is not dependent upon the parties to the suit but rather the nature or subject matter of the action. Jurisdiction exists as long as the suit is for violation of a contract between a union and employer even if neither party is a union or

an employer. *Alvares v. Erickson,* 514 F.2d 156, 162–64 (9th Cir.), *cert. denied,* 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975); *see Smith v. Evening News Association,* 371 U.S. 195, 200–01, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). The pension benefit eligibility rules, which Lillian alleges were violated, qualify as a contract between a labor organization and an employer. *Alvares v. Erickson, supra,* 514 F.2d at 161.

Lillian's second contention is that § 301 does not encompass suits enforcing "uniquely personal" rights. She cites *Association of Westinghouse Salaried Employees v. Westinghouse Elec. Corp.,* 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510 (1955), where the Court held that § 301 did not confer federal jurisdiction over a suit by a union to collect wages allegedly due its members under a collective bargaining contract. Three Justices of the six-Justice majority were concerned about the constitutionality of giving the federal courts jurisdiction of suits arising under the state law of contracts and, to avoid this problem, concluded that Congress did not intend to confer federal jurisdiction over suits for breaches of collective bargaining contracts "relating to compensation, terms peculiar in the individual benefit which is their subject matter . . . ." *Id.* at 460, 75 S.Ct. at 500 (opinion of Frankfurter, J.). Two justices saw the only issue as one of statutory interpretation and concluded that Congress did not intend "to authorize a union to enforce in a federal court the uniquely personal right of an employee . . . to receive compensation for services rendered his employer." *Id.* at 461, 75 S.Ct. at 501 (opinion of Warren, C. J.). Justice Reed characterized the suit as one for breach of individual employment contracts and not for violation of a collective bargaining agreement. He concluded that § 301 was not even literally applicable. *Id.* at 464, 75 S.Ct. 489.

 Two years later in *Textile Workers Union v. Lincoln Mills, supra,* the Court removed the basis for the constitutional doubts expressed by Justice Frankfurter in *Westinghouse* by holding that federal courts must fashion federal common law

from national labor policy in suits under § 301. Five years later in *Smith v. Evening News Association, supra,* the Court said that "subsequent decisions here [most importantly *Textile Workers v. Lincoln Mills*] have removed the underpinnings of *Westinghouse* and its holding is no longer authoritative as a precedent." 371 U.S. at 199, 83 S.Ct. at 269. The Court articulated its reasons for concluding that § 301 covers suits for the enforcement of individual rights arising from collective bargaining contracts:

> The rights of individual employees concerning rates of pay and conditions of employment are a major focus of the negotiation and administration of collective bargaining contracts. Individual claims lie at the heart of the grievance and arbitration machinery, are to a large degree inevitably intertwined with union interests and many times precipitate grave questions concerning the interpretation and enforceability of the collective bargaining contract on which they are based. To exclude these claims from the ambit of § 301 would stultify the congressional policy of having the administration of collective bargaining contracts accomplished under a uniform body of federal substantive law. This we are unwilling to do.

371 U.S. at 200, 83 S.Ct. at 270. Thus if individual rights to pension benefits are deemed to arise from the collective bargaining agreement, § 301 jurisdiction exists and Lillian's argument based on *Westinghouse* must be rejected.

 Many courts since *Smith* have entertained, under § 301 actions relating to collectively-bargained fringe benefit trusts,[1] and most courts which have considered the precise issue before us have held that individual rights to benefits under collectively-bargained welfare and pension plans are enforceable under § 301.[2] Indeed, in a decision holding that benefits for workers who have already retired are not a mandatory subject of bargaining, the Supreme Court noted the undeniable interests of unions in seeing that negotiated benefits are paid in accordance with the terms of collective bargaining contracts and suggested that § 301 is the remedy specifically established by Congress for breaches of such provisions. *Chemical Workers Local 1 v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 176–77 n. 17, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971) (dictum). These authorities all support § 301 jurisdiction of this case.[3]

1. E. g., *Alvares v. Erickson,* 514 F.2d 156 (9th Cir. 1975) (action to determine rights of members of newly-independent local to portion of statewide pension trust fund); *UAW v. Textron, Inc.,* 312 F.2d 688 (6th Cir. 1963) (action to determine employees' rights in a terminated pension fund); *Carpenters Local 626 v. Delaware Contractors Ass'n.,* 344 F.Supp. 1281 (D.Del.1972), *aff'd per curiam,* 477 F.2d 564 (3d Cir. 1973) (action to determine lawfulness of administration of vacation fund); *Knoll v. Phoenix Steel Corp.,* 325 F.Supp. 666 (E.D.Pa. 1971), *aff'd,* 465 F.2d 1128 (3d Cir. 1972), *cert. denied,* 409 U.S. 1126, 93 S.Ct. 941, 35 L.Ed.2d 257 (1973) (action by former employees to discontinue pension fund and distribute assets to beneficiaries upon closing of plant); *Hauser v. Farwell, Ozmun, Kirk & Co.,* 299 F.Supp. 387 (D.Minn.1969) (action to determine employees' rights in terminated pension fund); *Stove Mounters' Local 90 v. Welbilt Corp.,* 178 F.Supp. 408 (E.D.Mich.1959), *aff'd,* 283 F.2d 868 (6th Cir. 1960) (action to compel employer's payments to pension fund).

2. E. g., *Leonardis v. Local 282 Pension Trust Fund,* 391 F.Supp. 554, 556–57 (E.D.N.Y.1975); *Franciosa v. Bricklayers Fund Office,* 73 L.C. § 14,258, at 28,857 (S.D.N.Y.1974); *Hancock v. Central States, Southeast and Southwest Areas Pension Fund,* 84 L.R.R.M. 2635, 2637 (S.D.Ind. 1973); *Hayes v. Morse,* 347 F.Supp. 1081, 1087 (E.D.Mo.1972), *aff'd,* 474 F.2d 1265 (8th Cir. 1973); *Brune v. Morse,* 339 F.Supp. 159 (E.D. Mo.1972), *aff'd,* 475 F.2d 858 (8th Cir. 1973).

3. We have discovered, however, two decisions to the contrary. In *Bean v. International Organization of Masters,* 511 F.2d 975 (2d Cir. 1975), the wife of a deceased union member sought an accidental death benefit that the welfare plan trustees had denied on the ground that the member's death was caused at least partly by disease and not solely by accident. The district court held that it did not have jurisdiction of the suit under § 301 and the Second Circuit affirmed. The court distinguished *Smith v. Evening News Association, supra,* and other cases cited by the widow (including several of the cases cited in note 1, *supra*) as "all involv[ing] directly the collective bargaining agreement or machinery . . . ." *Id.* at 978. It then rejected jurisdiction on the

## III. The Law Applied by the District Court

■ The district judge applied principles derived from state law. Certainly, in fashioning federal substantive law in suits under § 301, courts may adopt in whole or in part state law, but only if the state law is compatible with federal labor policy. *Textile Workers Union v. Lincoln Mills, supra,* 353 U.S. at 457, 77 S.Ct. 912. We find that the rules applied by the district judge in this case are either incompatible with federal policy or inapplicable based upon the record before us.

■ The district court relied primarily on a rule that legitimate expectations of coverage ought to be fulfilled absent clear, plain and conspicuous language in the contract to the contrary. In support of this rule, the court cited a number of California cases construing commercial insurance contracts.[4] Each of these cases, however, involved standardized form contracts offered by commercial insurance companies to individual consumers of lesser bargaining strength on a take-it-or-leave-it basis. In dealing with such contracts "the California courts have long been disinclined to effectuate clauses of limitation of liability which are unclear, unexpected, inconspicuous or unconscionable." *Steven v. Fidelity & Cas. Co.,* 58 Cal.2d 862, 878, 27 Cal.Rptr. 172, 183, 377 P.2d 284, 295 (1962).

But the provisions of the pension plan before us are not part of a standardized contract offered to a party of lesser bargaining strength on a take-it-or-leave-it basis. Rather the pension plan is the result of collective bargaining between Sam's union and his employers. If congressional labor policy is successful, these parties are of relatively equal bargaining strength. There is no basis in the record before us for treating this collective bargaining agreement as a contract of adhesion. Indeed, we doubt that the California courts would apply adhesion contract analysis in this case.[5]

---

ground that "we must be hesitant about reading *Smith* [for] the proposition that Section 301 creates federal court jurisdiction each time a decision of Trustees involving the application of rules of a jointly-administered trust to an individual claim is challenged." *Id.*

The reason for the Second Circuit's "hesitan[cy]" is perhaps explained in *Austin v. Calhoon,* 360 F.Supp. 515 (S.D.N.Y.1973). There a union member suffering from a duodenal ulcer sought a disability pension which had been denied on the ground that he was not permanently and totally disabled. The court dismissed the suit for lack of jurisdiction under § 301. It concluded that *Smith* sanctioned enforcement of individual rights under § 301 only if those rights are the "major focus of the negotiation and administration of collective bargaining contracts," are "intertwined with union interests" or "precipitate grave questions concerning the interpretation and enforceability of the collective bargaining contract." *Id.* at 517, *quoting Smith v. Evening News Association, supra,* 371 U.S. at 200, 83 S.Ct. 267. The court reasoned that Austin's claim was not of this type "but rather [involved] a *medical judgment* as to whether or not he [was] disabled." *Id.* (emphasis in original).

We decline to follow the reasoning of these cases. We do not read *Smith* as holding that § 301 jurisdiction depends on a case-by-case determination of the importance to the collective bargaining process of the individual rights sought to be enforced. On the contrary, we read *Smith* as holding that individual rights *in general* are important enough that "[t]o exclude [them] from the ambit of § 301 would stultify the congressional policy of having the administration of collective bargaining contracts accomplished under a uniform body of federal substantive law." 371 U.S. at 200, 83 S.Ct. at 270. Indeed, if we were to hold that individuals cannot enforce under § 301 their claims of eligibility for fringe benefits provided by collective bargaining agreements, we would be moving a significant aspect of the administration of collective bargaining contracts outside the scope of the uniform body of federal substantive law. This result is clearly contrary to *Smith.* Thus we hold that Lillian's claim to benefits is enforceable under § 301 and that federal substantive law must be applied.

4. *Atlantic Nat'l. Ins. Co. v. Armstrong,* 65 Cal.2d 100, 112, 52 Cal.Rptr. 569, 577, 416 P.2d 801, 809 (1966); *Steven v. Fidelity & Cas. Co.,* 58 Cal.2d 862, 878, 27 Cal.Rptr. 172, 182, 377 P.2d 284, 294 (1962); *Schmidt v. Pacific Mut. Life Ins. Co.,* 268 Cal.App.2d 735, 738, 74 Cal. Rptr. 367, 369 (1969).

5. *See, e. g., Park v. Board of Trustees,* 21 Cal. App.3d 630, 633, 98 Cal.Rptr. 859, 861 (1971) (decision of trustees denying benefits is final and binding absent allegation of arbitrary, capricious or bad faith action). *But cf. Frietzsche v. First Western Bank & Trust Co.,* 168 Cal. App.2d 705, 707, 336 P.2d 589, 590 (1959) (terms of non-collectively-bargained pension plan construed most strongly against employer).

To the extent that the principles of California commercial insurance law would be applicable, however, we hold that they are not consistent with the federal policy of treating parties to collective bargaining contracts as parties of equal strength.

■ The district court also applied the rule that ambiguities in a contract should be resolved against the draftsman. As authority for this rule, the court cited the California adhesion contracts cases referred to earlier. Indeed, it appears that the rule is rigorously applied only in the context of adhesion contracts. In other contexts, the rule is applicable only as a "mere tie-breaker." *Cf. Steven v. Fidelity & Cas. Co., supra,* 58 Cal.2d at 871, 27 Cal.Rptr. at 178, 377 P.2d at 290. Because federal labor law assumes the bargaining strength of the Union and Sam's employers to be equal, only the more limited use of the rule as a "tiebreaker" would be appropriate here.

A more serious defect, however, flaws the district court's use of this rule of construction in the present case. Here there was no evidence concerning whether the eligibility rules were drafted by the employers or by the Union. The court therefore had no basis for applying the rule against either party to the contract.

■ The district judge also relied on the rule or maxim that the law abhors forfeitures. But a Union member's designation of an "impermissible" beneficiary does not cause a forfeiture of § 9B benefits. If the designated beneficiary is not eligible to recover the § 9B benefits, the benefits are paid to one would would have been an eligible beneficiary. Therefore, the § 9B benefits were not "forfeited" because Sam designated Lillian as beneficiary; they were lost because Sam left no eligible recipient.

■ Finally, the court below concluded that the trustees are estopped to deny Lillian § 9B benefits because they permitted ambiguities into the plan and because they accepted, without objection, Sam's pension applications. These conclusions are not supported by the record. The only way Sam could have made Lillian eligible for § 9B benefits was to marry her. There was no finding or evidence that Sam failed to marry Lillian because of any action of the trustees. There was thus no detrimental reliance, a necessary element of estoppel.

We conclude that the judgment for Lillian was based on an erroneous application of law. Therefore, it must be reversed. The only question remaining is whether the remand should be for further proceedings or for entry of judgment for the trustees. Resolution of that issue requires us first to consider the proper standard of judicial review of trustee decisions.

## IV. Judicial Review of Trustees' Decisions

### A. The Argument Against Reviewability

■ The trustees argue that their decision denying Lillian benefits is not reviewable. Their argument can be summarized as follows: Section 302(c)(5) of the Act, 29 U.S.C. § 186(c)(5), requires that "employees and employers [be] equally represented in the administration of [collectively-bargained pension funds], together with such neutral persons as the representatives of the employer and the representatives of the employees may agree upon" and provides for neutral umpires to break deadlocks. The trustees contend that the administration of the fund is analogous to the grievance machinery. Therefore, those trustees appointed by the Union owe a duty of fair representation to employees such as Sam, *cf. Vaca v. Sipes,* 386 U.S. 171, 177–78, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Beriault v. Longshoremen's Union Local 40,* 501 F.2d 258, 263 (9th Cir. 1974), but as long as this duty is fulfilled, the decision of (apparently all of) the trustees on Lillian's claim is final and binding on the parties. *Cf. Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652–53, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Humphrey v. Moore,* 375 U.S. 335, 350–51, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). Lillian has neither alleged nor proved a breach of the

duty of fair representation. Accordingly, the argument goes, the district court should have entered judgment for the trustees.

■ The trustees are not the first to suggest that the structure of § 302(c)(5) implies that trust administration is an extension of or analogous to collective bargaining. *See, e. g.,* Goetz, *Developing Federal Labor Law of Welfare and Pension Plans,* 55 Cornell L.Rev. 911, 921–25 (1970). But the cases involving trust administration indicate that the analogy to collective bargaining is not perfect. *See id.* at 923–25. Indeed, some courts have rejected the analogy outright. *E. g. Miniard v. Lewis,* 128 U.S.App.D.C. 299, 387 F.2d 864, 865 n. 5 (1967), *cert. denied,* 393 U.S. 873, 89 S.Ct. 166, 21 L.Ed.2d 144 (1968). The only statements of the Supreme Court on the issue are against the trustees' position. The Court has said that "the union's role in the administration of the fund is of a far different order from its duties as collective-bargaining agent." *Chemical Workers Local 1 v. Pittsburgh Plate Glass Co., supra,* 404 U.S. at 170, 92 S.Ct. at 393. The Court has also suggested that retirees have a federal remedy under § 301 for breach of the obligation to pay pension benefits, *Id.* at 176–77 n. 17, 92 S.Ct. 383, and for unilateral changes in pension benefits, *Id.* at 181 n. 20, 92 S.Ct. 383. Yet an action for breach of the alleged duty of fair representation in the administration of a pension plan, which the trustees contend is Lillian's only remedy, has been held not to be maintainable under § 301. *Nedd*

*v. UMW,* 400 F.2d 103, 105–06 (3rd Cir. 1968). We therefore reject the trustees' argument analogizing trust administration to collective bargaining as not supported by authority.[6]

Nothing in the present case requires Lillian to prove a breach by the Union-appointed trustees of their duty of fair representation before a federal court can entertain, under section 301, her claim of breach of the agreement.

■ In addition, there is a very practical reason why an action for breach of the duty of fair representation should not be deemed to constitute the sole remedy for an aggrieved employee: such a remedy in some cases may be wholly inadequate to protect the employee or his dependents. Action on most trust matters can be taken by a simple majority of the trustees. *Goetz, supra,* at 923. Accordingly, the trustee-representatives of the employers and a neutral trustee could, on a wholly arbitrary or capricious basis, deny benefits to an employee even though all trustee-representatives of the employees voted to grant the benefits. In such a situation, the aggrieved employee's duty of fair representation action would be useless because the only group bound by that duty—the representatives of the employees—would not have breached the duty. The employee's injury from the arbitrary or capricious trustee conduct would go unremedied.

---

**6.** We do not mean to intimate that the union has no duty of fair representation in the administration of trust funds. Several cases suggest that such a duty exists, *see, e. g., Nedd v. UMW,* 400 F.2d 103, 105–06 & n. 5 (3d Cir. 1968), but we do not express an opinion on the issue. We hold only that an action for breach of the duty of fair representation is not the exclusive remedy for trustee denial of a fringe benefit claim.

The trustees also contend that breach of the collective bargaining agreement, which triggers section 301 jurisdiction, can never occur without a breach of the duty of fair representation. Hence, since Lillian has failed to prove a breach by the Union's representative of that duty, her section 301 suit must necessarily fail. We reject this argument to the extent is proposed as a statement of an invariable rule; it results from a misreading and misappli-

cation of *Vaca v. Sipes, supra,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The argument has validity when a breach of the Union's duty of fair representation would otherwise operate to preclude judicial cognizance of a breach of the collective bargaining agreement. Such a situation occurs, for example, when the agreement creates a grievance and arbitration procedure as the exclusive remedy for its breach, the employer breaches the agreement injuring an employee, and the Union refuses in bad faith to press for arbitration. Until the employee proves the Union's bad faith, *i. e.,* its breach of its duty of fair representation, the arbitration clause in the collective bargaining agreement precludes a section 301 suit. *See Vaca v. Sipes, supra,* 386 U.S. at 184–86 & nn. 9–10, 87 S.Ct. 903.

## B. The *Danti* Standard

■ This does not mean, however, that a federal court may substitute its judgment for that of the trustees. In a series of cases involving individual claims to benefits under pension trusts administered by the United Mine Workers Union, the District of Columbia Circuit has developed a standard for reviewing trustee decisions. Those decisions may be reversed only where they are arbitrary, capricious or made in bad faith, not supported by substantial evidence, or erroneous on a question of law. *Danti v. Lewis,* 114 U.S.App.D.C. 105, 312 F.2d 345, 348 (1962). *See also Gomez v. Lewis,* 414 F.2d 1312, 1314 (3d Cir. 1969); *Miniard v. Lewis, supra,* 387 F.2d at 865; *Kosty v. Lewis,* 115 U.S.App.D.C. 343, 319 F.2d 744, 747 (1963), *cert. denied,* 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1964).

The trustees have not cited any of these cases, apparently in the belief that they are not applicable. We believe, however, that for several reasons the standard of judicial review enunciated in *Danti* and its progeny may be appropriately followed here. First, we concluded earlier that the federal courts have § 301 jurisdiction over cases involving individual claims to pension trust benefits. Thus, the federal courts in deciding *Danti* and the cases following it were not merely applying the general common law of the state as an exercise of their diversity jurisdiction. Rather they were pronouncing a rule of federal labor law applicable in all similar cases.

■ Even if, however, the only basis for jurisdiction for the *Danti* line of cases was diversity of citizenship (the basis for federal jurisdiction was not clearly identified), the standard developed in those cases is one that may properly be applied in suits under § 301. The District of Columbia Circuit recognized, in formulating that standard, that the "institutional arrangements creating" welfare and pension trust funds and specifying their purposes "are cast expressly in fiduciary form . . . ." *Kosty v. Lewis, supra,* 319 F.2d at 747; *see also* 29 U.S.C. § 186(c)(5) (directing that employers' contributions shall be held "in trust"). To give meaning to the rights of beneficiaries involved in any fiduciary relationship, the courts have always found it necessary to subject the conduct of the fiduciaries to judicial review and correction. *Id.* Where, however, the instrument defining the fiduciaries' duties gives them broad discretion, as is generally the case with welfare and pension trusts, the courts limit their review and intervene in the fiduciaries' decisions only where "they have acted arbitrarily or capriciously towards one of the persons to whom their trust obligations run." *Id.* We find this standard of judicial review, which leads neither to abdication of traditional judicial control of fiduciaries nor to excessive judicial intervention in trust operations, in harmony with federal labor policy. Accordingly, if the *Danti* standard is a statement of state law, or general common law, it is a standard we adopt.[7] *See generally Goetz, supra,* 55 Cornell L.Rev. at 936.

## C. Applying the *Danti* Standard

■ Although Lillian's complaint was obviously not drafted with the *Danti* standard of review in mind, it can clearly be read as at least challenging the trustees' interpretation of the term "spouse" in § 9B of the collective bargaining agreement. Even though they had never obtained a marriage license nor participated in a marriage ceremony, there was evidence that

---

**7.** We note that at least two district courts have applied the *Danti* rule in § 301 suits. *Hancock v. Central States, Southeast and Southwest Areas Pension Fund,* 84 L.R.R.M. 2634 (S.D.Ind. 1973); *Hayes v. Morse,* 347 F.Supp. 1081 (E.D. Mo.1972), *aff'd,* 474 F.2d 1265 (8th Cir. 1973).

Also, we have applied this same standard of judicial review in a context similar to what is now before us. In a diversity case brought by an employee to challenge trustee-promulgated rules of eligibility we stated:

Section 302 requires that a pension trust be "for the sole and exclusive benefit of employ-

ees." The trustees of such a trust, while possessing a large measure of discretion in prescribing conditions of eligibility for benefits, owe a fiduciary duty to the employees and may neither impose unreasonable conditions of eligibility nor act arbitrarily in determining who is eligible. *Roark v. Lewis,* 130 U.S.App.D.C. 360, 401 F.2d 425 (1968), adhered to sub nom. *Roark v. Boyle* [141 U.S. App.D.C. 390], 439 F.2d 497.

*Lee v. Nesbitt,* 453 F.2d 1309, 1311 (9th Cir. 1972); *see also Giler v. Sheet Metal Workers,* 509 F.2d 848 (9th Cir. 1975).

Sam thought of Lillian as his wife. The trustees, however, construed "spouse" to require a marriage valid under state law. There was no evidence or allegation that the trustees had ever interpreted the term in any other way. In addition, we find the interpretation reasonable. Therefore, the interpretation was not arbitrary or capricious. *See Miniard v. Lewis, supra,* 387 F.2d at 865.

It may well be, however, that Lillian's complaint could be interpreted as also challenging the handling of Sam's pension applications designating Lillian as beneficiary. There was no allegation or evidence that the trustees failed to disclose to Sam the benefit provisions. Lillian contends, however, that the trustees should have told Sam that Lillian would not be eligible for § 9B benefits.

We should allow the district court the first opportunity to assess this contention. That assessment must be made, however, within the limited scope of judicial review of trustees' decisions set forth in this opinion.[8]

REVERSED AND REMANDED.

---

**8.** The complaint might also be read as alleging that in drafting the eligibility provisions, the denial of § 9B benefits to beneficiaries who are not in the specified classes was arbitrary and capricious. However, the record is devoid of any evidence that the trustees had anything to do with the drafting of the provisions in question.