664 F.2d 1339
 Carl BARND, Plaintiff-Appellee,
v.
The CITY OF TACOMA, Steven Stockinger, Jerry Bahr, Lee
Revelle, John Does 1 through 10, Defendants-Appellants.
 No. 80-3345.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 2, 1981.
Decided Jan. 4, 1982.
 
 Dale W. House, Seattle, Wash., for defendants-appellants.
 Sverre O. Staurset, Graves & Staurset, Tacoma, Wash., for plaintiff-appellee.
 Appeal from the United States District Court for the Western District of Washington.
 Before HUG and FARRIS, Circuit Judges, and REED,* District Judge.
 FARRIS, Circuit Judge:
 
 
 1
 Carl Barnd, his wife and their minor child initiated this action against the City of Tacoma and three of its police officers under 42 U.S.C. § 1983. They alleged false arrest and imprisonment of Mr. Barnd causing physical injuries, emotional distress, and loss of earnings and earning capacity. Defense counsel referred to Barnd's prior arrests during his opening statement to the jury. The district court declared a mistrial and ordered defense counsel to personally pay jury costs, witness and expert costs, and attorney's fees totalling $2,911.72. Defense counsel appeals only the personal sanction. We remand.
 
 FACTS
 
 2
 Just prior to counsels' opening statements, Barnd's attorney requested, through a motion in limine, an order preventing defendants from offering evidence of Barnd's criminal record. The motion was predicated on Fed.R.Evid. 609 (use of convictions to impeach). Defense counsel opposed the motion, explaining that evidence of prior arrests would be offered as substantive evidence tending to prove that the arrest and imprisonment at issue did not cause emotional distress or impair plaintiff's ability to earn a living.
 
 
 3
 The court responded:THE COURT: Well we will look at it again, but I think if you are going into the question of damages, the probative value might outweigh the prejudice value.[1]
 
 
 4
 Barnd's attorney then offered to remove "psychological damages" as an element of damages, but the court still denied the motion, making the following statements:
 
 
 5
 THE COURT: Well it will come I imagine when counsel asks have you ever been convicted of a crime, and if there is no evidence in, I am sure you are going to object.
 
 
 6
 THE COURT: Everybody worries about everything, Counsel. I don't know where it is yet, so I don't want to rule on it. Why give an order in limine when we don't know what the evidence is going to be yet?
 
 
 7
 THE COURT: I know, Counsel, but these cases have a way, sometimes they don't come out the way counsel think they are going to come out. All I am saying is that if it is in the record, then I am going to allow it.
 
 
 8
 After additional unrelated motions, the jury was brought in and the attorneys proceeded with opening statements. With respect to damages, Barnd's attorney told the jury that Barnd and his family were so fearful after the arrest that they moved to a new residence outside the city of Tacoma. He also told the jury that Barnd had been out of work since the day of the arrest, implying that the arrest was the cause of Barnd's unemployment.[2]
 
 
 9
 Defense counsel responded to the claims of fear and unemployment:
 
 
 10
 Mr. Barnd has made a number of claims in this case, and the indication is that he is entitled to punish the City of Tacoma and the officers because they arrested him and fingerprinted him and put him in jail and took his picture. You will discover that Mr. Barnd has been arrested and fingerprinted and had has been placed in cells for a number-
 
 
 11
 at which point Barnd's attorney objected, and defense counsel, still before the jury, defended his reference to prior arrests:
 
 
 12
 Yes, and (opposing counsel) has raised the point that this man is somehow entitled to a lot of money because he has been arrested, and I am simply trying to put in perspective that it is nothing new for Mr. Barnd.
 
 
 13
 Barnd's attorney moved for a mistrial. After argument outside the presence of the jury, a mistrial was declared. The district court found that the jury was tainted, that the taint was deliberate and intentional, and that it was doubtful whether any precautionary instruction could correct the situation. The district court did not make a finding that defense counsel actually violated a court order or that counsel intended to cause a mistrial, nor did the district court make an express finding that defense counsel willfully abused judicial process or acted in bad faith. Sanctions were imposed two days later after consideration of defense counsel's additional legal arguments and protestations of good faith made orally and by affidavit.
 
 ANALYSIS
 
 14
 The record does not reflect whether, in imposing sanctions, the district court relied upon 1) its inherent powers, 2) 28 U.S.C. § 1927 (unreasonably and vexatiously increasing costs), 3) W.D. Wash. Local General Rule 3(d) (similar to § 1927), or 4) 18 U.S.C. § 401 (contempt power), or some combination of the above.
 
 I. Inherent Powers of the Trial Court
 
 15
 "The inherent powers of federal courts are those which 'are necessary to the exercise of all others.' " Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (quoting United States v. Hudson, 7 Cranch 32, 34, 3 L.Ed. 259 (1812)). "Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." Roadway Express, 447 U.S. at 764, 100 S.Ct. at 2463.
 
 
 16
 A trial court's inherent powers unquestionably include the power to assess attorney's fees against any counsel who willfully abuses judicial process or otherwise conducts litigation in bad faith. See id. at 766, 100 S.Ct. at 2464. However, "(l)ike other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." Id. at 767, 100 S.Ct. at 2464.
 
 
 17
 Assessment of attorney's fees and other costs in this instance would serve to protect the trial court's control of the trial process by deterring similar conduct in the future, see National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976), and would promote the just, speedy, and inexpensive determination of actions consistent with Fed.R.Civ.P. 1. The sanctions also would partially remedy the prejudice to Barnd and punish (and hopefully reform) defense counsel. The question here is whether upon this record one can reasonably conclude that defense counsel willfully abused judicial process or otherwise acted in bad faith. See Roadway Express, 447 U.S. at 766, 767, 100 S.Ct. at 2464, 2465. The district court made no such finding and in the absence of a definitive ruling on the motion in limine, which the court declined to make, we question whether as a fact the reference was willful or in bad faith.
 
 
 18
 The trial court did find that the taint was deliberate and intentional, that Fitzer purposefully made the impermissible references for the improper motive of prejudicing the jury. It is this finding which causes us to remand for a finding of fact on the question of bad faith rather than reverse the award of sanctions. In the absence of specific findings of fact, our review of the record suggests that defense counsel acted imprudently and contrary to the district court's intended but unstated position that references to Barnd's prior arrests were not to be made in front of the jury until after a final ruling on admissibility had been made. Defense counsel did not, however, violate any express order.
 
 
 19
 Even though the record suggests that the evidence may have been admissible for the purpose stated, admissibility (or the high probability of admissibility) would not excuse a willful abuse of judicial process. Counsel must obey even erroneous orders. Chapman v. Pacific Tel. & Tel. Co., 613 F.2d 193, 197 (9th Cir. 1979). We question, however, whether the district court considered that admissibility would defeat the chain of causation. Even if defense counsel did taint the jury, it would not have been necessary to declare a mistrial if the same evidence would have been admitted during the course of the trial.
 
 
 20
 II. 28 U.S.C. § 1927 and Local General Rule 3(d)
 
 
 21
 Both 28 U.S.C. § 1927 and Local General Rule 3(d) provide that an attorney who so multiplies the proceedings in any case as to increase costs "unreasonably and vexatiously" may be required by the court to satisfy personally such excess costs.
 
 
 22
 Whether defense counsel increased the costs "unreasonably and vexatiously" within the meaning of § 1927 depends on whether the language "unreasonably and vexatiously" is applied literally or whether it implies a bad faith or intentional misconduct requirement not explicit in the statute. The latter approach is suggested by Asai v. Castillo, 593 F.2d 1222, 1225 (D.C.Cir.1979) (bad faith requirement); United States v. Ross, 535 F.2d 346, 349 (6th Cir. 1976) (intent or recklessness); Kiefel v. Las Vegas Hacienda, Inc., 404 F.2d 1163, 1167 (7th Cir. 1968), cert. denied, 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969) (a "serious and studied disregard for the orderly processes of justice"); and West Virginia v. Charles Pfizer & Co., 440 F.2d 1079, 1092 (2d Cir.), cert. denied, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971) (a "clear showing of bad faith").
 
 
 23
 We are persuaded by those decisions which require intent, recklessness or bad faith. Therefore we hold the sanctions could not be authorized by § 1927 without additional findings of fact. Whether defense counsel acted recklessly or in bad faith or intended to increase costs by causing a mistrial is a question that remains unresolved by the record.
 
 
 24
 Local General Rule 3(d) differs from § 1927 in two respects. First, it lists several examples of increasing costs unreasonably and vexatiously, none of which apply here. Second, it has not been amended to expressly allow assessment of attorney's fees against the offending attorney. These differences, if they do anything, narrow the coverage of Rule 3(d). We conclude that the sanctions here also are not authorized by Local Rule 3(d) absent additional findings of fact.
 
 III. Contempt Power
 
 25
 Presumably any contempt sanction would have been civil rather than criminal, since the sanctions were remedial rather than punitive. See Scott and Fetzer Co. v. Dile, 643 F.2d 670, 675 n.7 (9th Cir. 1981); United States v. Asay, 614 F.2d 655, 659 (9th Cir. 1980).
 
 
 26
 Upon the record, the only basis for a contempt sanction is 18 U.S.C. § 401(1) (obstruction of justice). However, if the conduct was not punishable under the district court's inherent powers, a contempt sanction under § 401(1) also was not appropriate. See Roadway Express, 447 U.S. at 764, 100 S.Ct. at 2463 (citing the contempt sanction as one of the trial court's inherent powers).
 
 
 27
 We therefore remand to the district court to either withdraw the personal sanctions or enter specific findings of fact on 1) whether defense counsel acted willfully or in bad faith and 2) what factors precluded mention of the subject matter of the motion in limine after the district court denied the motion.
 
 
 28
 REMANDED.
 
 HUG, Circuit Judge, dissenting:
 
 29
 I respectfully dissent. I would reverse on the ground that there was no clear order of the court which had been violated. A motion in limine had been made by the plaintiff. The motion was not granted by the trial judge. He indicated that he would consider whether the evidence could be admitted at some later date, after the facts had been more fully developed at trial.
 
 
 30
 The whole purpose of a motion in limine is to prevent the opposing side from asking a question or making comments in opening statements or otherwise bringing before the jury some fact which the movant believes will damage his case by the mere mention of it. A motion in limine can be granted and then later reconsidered when the opposing party brings it to the attention of the court in the light of the evidence which has been admitted. However, when a motion in limine has been denied, or at least not granted, this is certainly not a clear order for an attorney to avoid mentioning the subject or asking questions about it.
 
 
 31
 In my opinion, it was an abuse of discretion for the district court to have imposed this severe sanction on defense counsel for doing something that was not a clear violation of any order that the court issued. It seems at most to be a violation of what the judge may have intended rather than what the judge said. In my view, the inherent power of the court would not extend to levying sanctions of this type when the order alleged to have been violated was unclear.
 
 
 
 *
 Honorable Edward C. Reed, Jr., United States District Judge for the District of Nevada, sitting by designation
 
 
 [1]
 In fact the amount of damages was the only issue to be decided by the jury. The trial court already had stated that it would grant a motion for summary judgment or direct a verdict in Barnd's favor on the issue of liability. Subsequent to the mistrial the case was tried and Barnd was awarded $10,500
 
 
 [2]
 These references to Barnd's emotional distress and unemployment were part of the following explanation of physical injuries:
 We are talking here not only about a one person, we are going to ask you for damages of course for the broken nose, for the beating about the face and head and back that he took, but Mr. Barnd and his family were so fearful after this incident occurred, ... they were so frightened from this beating and the actions of the police that two days afterward they had gone to a rental company and asked them to help them find a place outside the City of Tacoma, because if this was the way they were going to be treated, they didn't know what was coming next, so they moved, they moved out in the country. This happened on June 14th of last year, and he had an operation on August 9th for the correction of nose problems, it took him several months to recover from the beating and the operation, and the problem with his lip where he had bruises in and around his front teeth, and he has been out of work since then. Up to the present time he has been looking for work again, trying to find a way to support his family, and it has been tough.