**George J. MALHIOT, and Marjorie M. Malhiot, Appellants,**

v.

**SOUTHERN CALIFORNIA RETAIL CLERKS UNION and Drug Employer Pension and Trust Fund, Appellees.**

No. 83–6010.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 1984.

Decided June 19, 1984.

Alan R. Jampol, Beverly Hills, Cal., Nolan F. King, Law Offices of Nolan F. King, Pasadena, Cal., for appellants.

Stuart Libicki, Schwartz, Steinsapir, Dohrman, Krepack, Sommers, Edelstein, Los Angeles, Cal., for appellees.

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

Before SNEED and BOOCHEVER, Circuit Judges, and SOLOMON,* District Judge.

SOLOMON, Senior District Judge:

Appellant Marjorie Malhiot is a beneficiary of the Southern California Drug Benefit Fund (Fund), created under a collective bargaining agreement. The Fund (appellee) denied medical benefits to Marjorie and her husband, George Malhiot. The district court affirmed the denial, and the Malhiots appealed. We affirm. We also assess costs and attorney's fees against the Malhiots' attorneys.

*Facts*

Marjorie Malhiot is employed by Thrifty Corporation. Thrifty employees are beneficiaries of the Fund, which receives employer contributions and provides medical benefits to employees, their spouses, and dependents. The Fund is administered under rules and regulations established by its trustees.

The Fund's eligibility rules provide that a spouse is eligible for benefits "as of the date of the marriage." The trustees have always defined "spouse" as an individual legally married to a member.

In February, 1981, George Malhiot sought reimbursement from the Fund for medical expenses he incurred in a March, 1980 automobile accident. The Fund's trustees refused to reimburse him for expenses incurred before December, 1980, the date of his marriage to Marjorie. George and Marjorie Malhiot were married in December, 1980, but they contend that they had already been married under California law in 1968.

They assert that they exchanged wedding vows before a minister and witnesses on February 14, 1968, but concede that

they had no marriage license and did not receive a marriage certificate.

For several years thereafter, Marjorie listed her last name as Davis (her previous married name) and her marital status as single on her employment records. She submitted a choice card[1] to the Fund giving her last name as Davis. In the space on the card labeled "husband or wife," she wrote "none."

Ten years after her alleged 1968 wedding ceremony, Marjorie submitted a choice card to the Fund naming George Malhiot as her spouse. An employee of the Fund requested a marriage certificate which Marjorie did not submit. After a telephone conversation between Marjorie and the Fund employee, the following notation was written on the choice card: "Per phone conversation with member, George is not legal spouse." The employee removed George's name from the card, and Marjorie submitted a new choice card which did not name George.

In March, 1980, George was injured in an automobile accident. On December 28, 1980, Marjorie and George were married. In February, 1981, George submitted his medical bills to the Fund. In March, 1981, Marjorie sent to the Fund a copy of their marriage certificate and a revised choice card naming George as her spouse. In a space labeled "date of marriage," she wrote "12/28/80."

The Fund denied George Malhiot reimbursement for medical expenses incurred before December 28, 1980 on the ground that he was not Marjorie's legal spouse before that date.

The Malhiots filed an action in the California Superior Court alleging violations of state insurance laws and the Employees Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* The Fund removed the action to federal district court. The court granted a stay to permit the Malhiots to administratively appeal the denial to the Fund's Board of Trustees.

The Fund's Appeals Committee recommended that the Board of Trustees deny the appeal on the ground that the Malhiots "were not legally married until December 28, 1980 and ... were unmarried at the time of the automobile accident.... [O]nly legal spouses are entitled to coverage." The Board of Trustees denied the Malhiots' appeal.

The district court dismissed the state insurance claims and entered judgment for the Fund on the ERISA claim.

The Malhiots filed a motion for new trial or, in the alternative, a motion to amend the pretrial order. The court denied both motions.

*Discussion*

I.

■ The Fund's Declaration of Trust grants the trustees discretion to fashion and apply eligibility requirements. Eligibility decisions by the trustees of an employee benefit plan will not be reversed by the courts unless they are arbitrary, capricious, made in bad faith, not supported by substantial evidence, or erroneous on a question of law. *Rehmar v. Smith*, 555 F.2d 1362, 1371 (9th Cir.1976); *Music v. Western Conference of Teamsters Pension Trust Fund*, 712 F.2d 413, 418 (9th Cir. 1983).

■ A definition of the word "spouse," which requires a marriage valid under state law, is not arbitrary or capricious. *Rehmar*, 555 F.2d at 1372.

■ The district court was required to determine, on the basis of the record before the trustees, whether the Fund's decision was based on substantial evidence. *Hicks v. Pacific Maritime Association*, 567 F.2d 355, 358 (9th Cir.1978). The trustees' decision was based on a letter from the Malhiots' attorney and two of Marjorie's choice cards. The attorney's letter alleged that George and Marjorie Malhiot

---

1. A choice card is filled out by an employee and designates spouse and dependents for benefit purposes.

had lived as husband and wife since 1968 and had exchanged marriage vows that year although "a formal certificate of marriage was never issued." The choice cards included the one with the notation that George's name had been removed after the telephone conversation with Marjorie and the card submitted soon after that conversation that did not name George. This evidence supports the trustees' decision to deny benefits on the ground that the Malhiots were not legally married before December 28, 1980.

■ Common law marriages are not recognized in California. *Menchaca v. Hiatt*, 59 Cal.App.3d 117, 130 Cal.Rptr. 607, 613–14 (1976). But the Malhiots argue that under California law, they were legally married in February, 1968 as a result of having lived together and gone through a marriage ceremony. They rely on Section 4213 of the California Civil Code, formerly Civil Code Section 79, which they assert provides that, "Where unmarried persons, not minors, have been living together as man and wife, they may be married by any clergyman, without a license or a health certificate." This quotation is the first sentence of a version of Section 79 that was in effect from 1878 until 1954. The second sentence of the statute, not cited by the Malhiots, is as follows: "A certificate of such marriage must, by the clergyman, be made and delivered to the parties, and recorded upon the records of the church of which the clergyman is a representative. No other record need be made."

The version of Section 79 that was in effect from 1954 until 1969 provided:

When unmarried persons, not minors, have been living together as man and wife, they may, without a license, be married by any clergyman. A certificate of such marriage shall, by the clergyman, be made and delivered to the parties, and recorded upon the records of the church of which the clergyman is a representative. No other record need be made.

The present version, now Section 4213, reads:

When an umarried man and an unmarried woman, not minors, have been living together as husband and wife they may without a license, be married by any person authorized to solemnize a marriage under Sections 4205, 4205.1, and 4205.5, without the necessity of first obtaining health certificates.

\* \* \* \* \* \*

Upon performance of the ceremony, the person performing the ceremony shall give a copy of the confidential marriage certificate to the parties who were married. The person performing the ceremony shall also provide the parties who were married with an application for a certified copy of the confidential marriage certificate which shall be filled out by the parties and sent by the person performing the marriage to the county clerk.

\* \* \* \* \* \*

Every version of the statute since 1878 has required certification by the person performing the ceremony in order for the marriage to be valid. The Malhiots have never produced a marriage certificate from the 1968 ceremony and were therefore not legally married under Section 79. The trustees correctly decided that the Malhiots were not married until December 28, 1980, and the district court properly upheld their decision.

## II.

The Malhiots apparently believe that if they can prove that they lived together before the 1968 ceremony, they will have proved that they were legally married under Section 79.

The Malhiots stipulated to a pretrial order which stated, "Plaintiffs Marjorie M. and George J. Malhiot have lived together since September 1, 1968." The Malhiots now assert that "1968" was a typographical error that they did not discover until after the trial. They allege that the date in the order should have been September 1, 1967. The Malhiots contend that the district court's refusal to allow amendment of

the pretrial order or to grant a new trial was an abuse of discretion.

■ The Malhiots' argument is without merit. The record discloses no evidence that the number "1968" was an error. The 1968 date conforms to the Malhiots' complaint, to their deposition testimony,[2] and to the letter which they submitted to the Fund.

A pretrial order will be modified only to prevent manifest injustice. Fed.R.Civ.P. 16(e). Even if there had been an error, amendment of the pretrial order would not have changed the evidence that was before the trustees and therefore would not have affected the outcome of the action. The district court's denial of the Malhiots' motion to amend the pretrial order was proper.

■ The same analysis applies to the district court's denial of the Malhiots' motion for a new trial. A new trial is warranted only when an error has caused substantial harm to the losing party. Fed.R. Civ.P. 61. No such error existed here.

### III.

■ The Malhiots contend that the Fund's appeal procedure denied them due process because they were not allowed to appear before the trustees in person, put on evidence, or confront witnesses. The Malhiots failed to raise this issue in the pretrial order or at trial. The Fund's appeal process complies with ERISA regulations. 29 C.F.R. § 2560.503–1(g).[3] An issue not listed in the pretrial order or raised later at trial will not be entertained on appeal. *United States v. Joyce*, 511 F.2d

1127, 1130 n. 1 (9th Cir.1975); *Westinghouse Electric Corporation v. Weigel*, 426 F.2d 1356, 1357 (9th Cir.1970). ·

### IV.

■ The Fund seeks an award of attorney fees from appellants' attorneys on the ground that the appeal is frivolous. Rule 38 of the Federal Rules of Appellate Procedure grants this court discretion to award damages, attorney's fees, and single or double costs as a sanction for bringing a frivolous appeal. *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 699 F.2d 484, 485 (9th Cir.1983). An appeal is frivolous if the result is obvious or if the claims of error are wholly without merit. *DeWitt v. Western Pacific Railroad Co.*, 719 F.2d 1448, 1451 (9th Cir.1983).

■ The Malhiots' argument that they were legally married under former Civil Code Section 79 is contradicted by the language of the statute and is wholly without merit. Even the pre-1954 statute quoted by counsel contained a sentence—omitted from counsel's quotation—requiring a marriage certificate. Every version of the statute after 1954 also required a marriage certificate. If the statute had been quoted in full, it would have been obvious that the Malhiots did not meet the requirements for a legal marriage under Section 79.

The Malhiots' contention that the trial court abused its discretion is also wholly without merit. Neither an amended pretrial order nor a new trial would have had the slightest effect on the outcome of this action. In addition, the Malhiots' due process argument was not raised before the

---

**2.** The original and first amended complaints state, "Plaintiffs have lived as husband and wife since 1968; on or about that date plaintiffs exchanged marriage vows and thereafter continuously declared ... that they were and are husband and wife." In their depositions, both Malhiots stated that they *met* in December, 1967 and began living together "the first week of February, 1968."

**3.** The regulations provide:
Every plan shall establish and maintain a procedure by which a claimant or his duly

authorized representative has a reasonable opportunity to appeal a denied claim to an appropriate named fiduciary or to a person designated by such fiduciary, and under which a full and fair review of the claim and its denial may be obtained. Every such procedure shall include but not be limited to provisions that a claimant or his duly authorized representative may: (i) request a review upon written application to the plan; (ii) review pertinent documents; and (iii) submit issues and comments in writing.

trustees or the district court and cannot be raised here.

■ We conclude that this appeal is frivolous and that sanctions under Rule 38, Federal Rules of Appellate Procedure are appropriate. This court is further authorized by 28 U.S.C. § 1927 to award fees and excess costs against counsel who multiply the proceedings in any case unreasonably and vexatiously. In this court, application of Section 1927 requires bad faith or intentional misconduct by counsel. *Barnd v. City of Tacoma*, 664 F.2d 1339, 1343 (9th Cir.1982).

Counsel's briefs to this court contain many misrepresentations of the record and an intentional misstatement of California law. In addition to quoting a statute that was superseded in 1954, counsel omitted from the quotation the sentence requiring a marriage certificate. Attorneys appearing before this court are held to the standards imposed by the American Bar Association's Code of Professional Responsibility. *MacDonald v. Musick*, 425 F.2d 373, 376 (9th Cir.1970); *Southern Pacific Transp. v. Public Utilities Comm'n*, 716 F.2d 1285, 1291 (9th Cir.1983), *petition for cert. denied*, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1983). The Code's disciplinary rules require that attorneys not engage in conduct that involves misrepresentation or that is prejudicial to the administration of justice; that they not present claims unwarranted by existing law; and that they not knowingly make a false statement of fact or law.[4] Counsel has violated these rules. This conduct constitutes the requisite bad faith and intentional misconduct for which sanctions under Section 1927 are appropriate.

Pursuant to this authority, we award damages of $1,500, which includes costs and attorney's fees, to the Fund. We make this award jointly and severally against appellants' counsel, Alan R. Jampol and Nolan F. King.

---

**4.** Code of Professional Responsibility DR 1–102(A)(4) and (5), 2–109(A)(2) and 7–102(A)(5)

BOOCHEVER, Circuit Judge, concurring and dissenting, in part:

I agree with Judge Solomon's opinion with one exception. I think that we should issue an order to show cause to the attorneys before imposing the sanction of an award of costs and attorney's fees.

My conclusion is that counsel is entitled to some sort of notice and hearing before this court holds them liable for costs and attorney's fees under 28 U.S.C. § 1927. The lead case supporting such a requirement is *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). There, in discussing the "inherent" power of a federal court to assess fees against counsel for bad faith conduct, the Court stated that "[l]ike other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." *Id.* at 767 (footnote omitted). Several Ninth Circuit cases also support the need for a hearing.

In *Barnd v. City of Tacoma*, 664 F.2d 1339 (9th Cir.1982), the district court ordered defense counsel to pay costs and fees as a sanction. On appeal, in analyzing the court's power to assess such fees, we noted the *Roadway Express* qualification regarding necessity of notice and hearing. *Id.* at 1342–43.

In *United States v. Blodgett*, 709 F.2d 608 (9th Cir.1983), the district court sanctioned counsel under 28 U.S.C. § 1927 for filing an interlocutory appeal the court found frivolous. This court remanded, holding that, because the conduct giving rise to imposition of sanctions occurred outside the presence of the district court, counsel was entitled to an opportunity to explain his conduct. *Id.* at 610.

In *Miranda v. Southern Pacific Transportation Co.*, 710 F.2d 516 (9th Cir.1983), the district court summarily imposed a monetary sanction on counsel under the auspices of a local rule. This court held that counsel was entitled to notice, an op-

(1979).

portunity to prepare a defense and a hearing before imposition of monetary sanctions. We stated:

This court, in an analogous circumstance, will not impose monetary penalties or take other disciplinary actions for an attorney's failure to comply with its orders until "after reasonable notice and an opportunity to show cause to the contrary, and after hearing, if requested ...." Fed.R.App.P. 46(c); *see United States v. Birtle*, 521 F.2d 134 (9th Cir. 1975), *cert. denied*, 426 U.S. 947, 96 S.Ct. 3165, 49 L.Ed.2d 1183 (1976).

*Id.* at 522.

Since section 1927 requires bad faith or intentional misconduct by counsel, I think that counsel should be entitled to present any arguments that they may have as to why the sanction should not be imposed. This is particularly true in this case since two attorneys signed on the brief and there was no oral argument. It may well be that at least one of the attorneys may be able to convince us that he had no part in the misleading arguments which are really the basis for imposing the sanction, and that he did not consciously adopt those arguments.

It seems to me that our case is controlled by *United States v. Blodgett*, 709 F.2d 608. In that case the district court imposed sanctions on counsel for filing a frivolous appeal. We held:

While on the facts we cannot conclude that the district court erred in finding that the appeal was frivolous, the mere fact that an appeal is frivolous does not of itself establish bad faith. To establish bad faith on this record, a hearing was required to determine if the appeal was taken solely for purposes of delay.

*Id.* at 610.

Similarly here, in order for us to determine that one or both of the attorneys acted in bad faith it is necessary to afford them a hearing.

I have not found a case addressing the issue of what specific procedure this court generally follows when it imposes a sanction under 28 U.S.C. § 1927. In *McConnell v. Critchlow*, 661 F.2d 116, 119 (9th

Cir.1981), however, we did impose a sanction under the statute. The opinion notes that counsel at oral argument was given an opportunity to state any reason why sanctions should not be imposed. Because no oral argument was held on the merits of the case at bar, I believe that the proper procedure at this time is to issue an order to counsel to show cause why a penalty should not be imposed. *See United States v. Birtle*, 521 F.2d 134 (9th Cir.1975), *cert. denied*, 426 U.S. 947, 96 S.Ct. 3165, 49 L.Ed.2d 1183 (1976) (following this procedure before sanctioning counsel under Fed. R.App.P. 46(c) for failure to prosecute an appeal with due diligence).